## WORK, SECRETARY OF THE INTERIOR *v.* UNITED STATES EX REL. RIVES.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 272. Argued November 25, 26, 1924.—Decided March 2, 1925.

1. Where the duties imposed upon an executive officer by a statute granting gratuities based on equitable and moral considerations include the duty of construing the statute itself in its execution, his construction of it is a discretionary act which can not be controlled by the writ of mandamus. P. 177.

2. Under § 5 of the Dent Act, March 2, 1919, c. 94, 40 Stat. 1272, refusal by the Secretary of the Interior to allow a claim for money spent to obtain a release from a contract to buy manganese land, the refusal being based upon the view that expenditures for real estate or mining rights were not "for or upon" property, but were speculative, within the meaning of the act—was conclusive against the claimant. P. 178.

3. The amendment of November 23, 1921, c. 137, 42 Stat. 322, did not change the act in this regard. P. 182.

4. This case, upon the facts admitted by the demurrer to the answer, is not within the class allowing mandamus to compel an officer to take action and exercise his discretion, or an inferior tribunal to take jurisdiction. P. 184.

54 App. D. C. 84; 295. Fed. 225 reversed.

APPEAL from a judgment of the Court of Appeals of the District of Columbia which affirmed a judgment of the Supreme Court of the District in mandamus, directing the Secretary of the Interior to consider and allow relator's claim, under the Dent Act, in so far as it included money spent to obtain a release from a contract he had made before the Armistice, to buy land containing manganese.

*Mr. Merrill E. Otis,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for plaintiff in error.

*Mr. Leslie C. Garnett,* with whom *Mr. Burgess W. Marshall* was on the brief, for defendant in error.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This is an appeal under section 250 of the Judicial Code, par. 6, from a judgment of the Supreme Court of the District of Columbia, affirmed by the Court of Appeals, granting a mandamus compelling the Secretary of the Interior to consider and allow a claim for net losses suffered by Logan Rives, the relator, in producing and preparing to produce manganese at the instance of the Government for war purposes, under section 5 of the Dent Act (March 2, 1919, ch. 94, 40 Stat. 1272).

Relator's petition shows that he incurred losses aggregating $55,204.15, but that the Secretary awarded him only $23,047.36, refusing to allow him, among other items, $9,600 which he had to expend in obtaining a release from a contract to buy land containing manganese, after the land had lost most of its value because of the armistice. The mandamus asked is to compel consideration and allowance of the claim for this particular item.

The Secretary's answer avers that the relator received and accepted the $23,047.36 awarded March, 1920, but

refused to waive any right to further award under any subsequent legislation which might provide for further payment.   The answer further denies that the Secretary refused to consider the claim, but avers that he did so fully and rejected it.   The relator demurred to the answer and on that demurrer judgment followed and the writ issued.

Mandamus issues to compel an officer to perform a purely ministerial duty.   It can not be used to compel or control a duty in the discharge of which by law he is given discretion.   The duty may be discretionary within limits.   He can not transgress those limits, and if he does so, he may be controlled by injunction or mandamus to keep within them.   The power of the court to intervene, if at all, thus depends upon what statutory discretion he has.   Under some statutes, the discretion extends to a final construction by the officer of the statute he is executing.   No court in such a case can control by mandamus his interpretation, even if it may think it erroneous. The cases range, therefore, from such wide discretion as that just described to cases where the duty is purely ministerial, where the officer can do only one thing, which on refusal he may be compelled to do.   They begin on one side with *Kendall* v. *United States,* 12 Peters, 524, in which Congress directed the Postmaster General to make some credit entries in an account found to be just by the Solicitor of the Treasury.   This Court held that the duty was ministerial with no discretion and required the Postmaster General to make the entries.   On the other side, is *Decatur* v. *Paulding, Secretary of the Navy,* 14 Peters, 497.   Congress there provided for general naval pensions by general Act, and by resolution of the same day granted a special pension for the widow of Commodore Decatur. She received the pension under the general law and then applied for the special pension, which was refused by the

Secretary of the Navy, on the ground that she was given an election of one of two funds and she had elected. She sought by mandamus to compel the Secretary, who under the law administered the Naval Pension fund, to allow the special pension. This Court held that Congress intended the Secretary to construe the statutes and to allow the pensions accordingly, and that although the court might, as a matter of legal construction, differ from his conclusion, it could not by mandamus or injunction constrain him in his exercise of his discretion. Between these two early and leading authorities, illustrating the extremes, are decisions in which the discretion is greater than in the *Kendall Case* and less than in the *Decatur Case*, and its extent and the scope of judicial action in limiting it depend upon a proper interpretation of the particular statute and the congressional purpose.

The Dent Act was passed by Congress in an effort to do justice and equity to the many persons who could not obtain from the Government compensation for supplies or services furnished or losses incurred in helping the Government during the war, because of a lack of enforceable contracts or equities. As to supplies and services furnished, there was to be a settlement made by the Secretary of War, and if this did not satisfy the claimant, he was given a right under section 2 to sue in the Court of Claims to recover greater compensation. Section 3 gave the Secretary power to settle fairly and equitably claims of foreign governments and their nationals for supplies and services rendered to the American Expeditionary forces whether by contract entered into in accordance with applicable statutory provisions or not. By section 4, the Secretary was given power to protect sub-contractors in his awards.

By section 5, provision was made, not to pay for supplies or services rendered directly to the Government, but to relieve a class of persons who were invited by the Gov-

ernment to invest money in the production and preparing for the production of certain metals or materials difficult to obtain, and needed for the war, and who had thereupon incurred expense therein and had suffered losses because of the coming of the armistice and the consequent destruction of the market for such metals.

The said Secretary was to make adjustments and payments in each case as he should determine to be just and equitable; and the decision of the Secretary was to be " conclusive and final." There were five provisos: The first imposed a limit of total expenditure under the Act. The second limited claims to those filed within three months after the passage of the Act.

The third proviso declared: " That no claim shall be allowed or paid by said Secretary unless it shall appear to the satisfaction of the said Secretary that the expenditures so made or obligations so incurred by the claimant were made in good faith for or upon property which contained . . . manganese . . . in sufficient quantities to be of commercial importance." The fourth proviso was: " That no claims shall be paid unless it shall appear to the satisfaction of said Secretary that moneys were invested or obligations were incurred subsequent to April 6, 1917, and prior to November 12, 1918 in a legitimate attempt to produce . . . manganese . . . for the prosecution of the war, and that no profits of any kind shall be included in the allowance of any of said claims, and that no investment for merely speculative purposes shall be recognized in any manner by said Secretary." The fifth proviso declared that the settlement of any claim under the section should not bar the Government through any authorized agency or any Congressional committee thereafter duly appointed from the review of such settlement, nor the right to recover any money paid by the Government to any party under the section if the Government had been defrauded.

The last paragraph of the section declared "That nothing in this section shall be construed to confer jurisdiction upon any court to entertain a suit against the United States" and closed with a proviso that in determining the net losses of any claimant, the Secretary should take into consideration and charge to him the then market value of any ores or minerals on hand belonging to him, and the salvage or usable value of his machinery or other appliances claimed to have been purchased to comply with the request of the Government.

On November 23, 1921, after the first award in this case, section 5 was amended (Ch. 137, 42 Stat. 322) by adding another proviso, that all claimants who in response to the request of any government agency mentioned in the Act expended money "in producing or preparing to produce" manganese, and had mailed their claims in time, "if the proof in support of said claims clearly shows them to be based upon action taken in response to such request . . . shall be reimbursed such net losses as they may have incurred and are in justice and equity entitled to from the appropriation in said Act. If in claims passed upon under said Act awards have been denied or made on rulings contrary to the provisions of this amendment, or through miscalculation, the Secretary of the Interior may award proper amounts or additional amounts."

This amendment was brought about on the recommendation of the Secretary of the Interior, because he had felt obliged, under section 5 as it was, to reject some 600 claims for failure within the time limit to show a direct personal request or demand upon the claimant by the government authorities named in the Act and a response thereto by the claimant and because the Comptroller had refused to pay any changed award of the Secretary made after a rehearing or to correct miscalculation.

It is urged that the refusal of the Secretary to allow the loss of $9,600 on the real estate contract is in the teeth of the third proviso, which requires him to allow for expenditures made or obligations incurred " for and upon property " containing manganese in sufficient quantities to be of commercial importance. The Interior Department had held from the beginning that this proviso did not embrace money spent for real estate or mining rights. The ruling was based in part at least on the legislative history of the bill, which showed that it originally contained an express provision for expenditures for real estate as a proper element in calculating the net losses to be reimbursed, and that this provision was objected to as involving too speculative a subject matter and it was stricken out. The Department's view was that expenditures " for and upon " property containing manganese and other metals did not include cost of real estate or mining rights because too speculative under the limitations of the fourth proviso and were intended to be confined to expenditures for construction, equipment and machinery in development of such property.

We are asked to reject this interpretation as wholly at variance with the natural and necessary meaning of the words and to confirm the courts below in enforcing a view more liberal to the claimant.

The above summary of section 5 clearly shows that Congress was seeking to save the beneficiaries from losses which it would have been under no legal obligation to make good if a private person. It was a gratuity based on equitable and moral considerations. *United States* v. *Realty Company,* 163 U. S. 427, 439; *Allen* v. *Smith,* 173 U. S. 389, 402. Congress did not wish to create a legal claim. It was not dealing with vested rights. It did not, as it did with the claims for supplies and services directly furnished the Government under the first and second sections of the Act, make the losses recoverable in

a court, but expressly provided otherwise. It dealt with
the subject with the utmost caution. It hedged the grant-
ing of the equitable gratuity with limitations to prevent
the use of the statute for the recovery of doubtful or
fraudulent claims or merely speculative losses. It vested
the Secretary with power to reject all losses except as he
was satisfied that they were just and equitable and it
made his decision conclusive and final. Final against
whom? Against the claimant. He could not resort to
court to review the Secretary's decision. This was ex-
pressly forbidden. By the fifth proviso, however, the
Government was permitted through any of its agencies
or even by a committee of Congress duly authorized, to
review the settlement by the Secretary and by necessary
implication to reverse it. If the Government was de-
frauded, it was authorized to sue to recover any money
paid under the award.

Congress was occupying toward the proposed bene-
ficiaries of section 5 the attitude rather of a benefactor,
than of a debtor at law. Congress intended the Secretary
to act for it, and to construe the meaning of the words
used to describe the elements of the net losses to be ascer-
tained and to give effect to his interpretation without the
intervention of the courts. This statute presents a case
of as wide discretion as was held to have been vested in
the Secretary of the Navy in the *Decatur Case.*

Nor does the amendment of 1921 change the effect of
the Act in this regard. His counsel insist that it was
adopted in order to relieve claimants from previous nar-
row rulings of the Secretary. There is nothing in the
amendment that indicates the Congressional purpose to
do more than it purports to do, i. e., to enable the Secre-
tary to entertain claims for losses incurred at the instance
of any government agencies whether direct and personal
or by public invitation, and to enable the Secretary to
grant rehearings, correct miscalculation and award addi-

tional amounts. The amendments still left all claims to his sense of justice and equity.

Two cases upon which the relator relies, do not aid him. They depend on the construction of the particular statute. In *Work* v. *Mosier,* 261 U. S. 352, we held that the statutory direction that certain income due minors of the Osage Indians be paid was clear and positive and it was not left to the Secretary of the Interior to vary it, i. e., he was not given discretion finally to construe it. In *Work* v. *McAlester,* 262 U. S. 200, it was held that by virtue of the statute a lessee had a vested right to buy the land at an original appraisement and that the Secretary had no authority to affect that right by ordering another appraisement.

*Ness* v. *Fisher,* 223 U. S. 683; *Riverside Oil Company* v. *Hitchcock,* 190 U. S. 316; *Alaska Smokeless Company* v. *Lane,* 250 U. S. 549; and *Hall* v. *Payne,* 254 U. S. 343, were all cases in which it was sought to control and reverse rulings of the Secretary of the Interior, on the ground that he had in the administration of the land laws made a ruling contrary to law against an applicant for action by him. In each case it was held that as the statute intended to vest in the Secretary the discretion to construe the land laws and make such rulings, no court could reverse or control them by mandamus in the absence of anything to show that they were capricious or arbitrary. It was pointed out that a mandamus could not be made to serve the function of a writ of error, and the mere fact that the court might deem the ruling erroneous in law gave it no power to intervene. These cases are supported by earlier authorities to the same effect. *United States ex rel. Tucker* v. *Seaman,* 17 How. 225; *Gaines* v. *Thompson,* 7 Wall. 347; *Litchfield* v. *Register and Receiver,* 9 Wall. 575; *United States ex rel. Dunlap* v. *Black,* 128 U. S. 40. All rest upon the *Decatur Case.* Compare *United States* v. *Babcock,* 250 U. S. 328, 331. There is

nothing in the award by the Secretary in the case at bar which would justify characterizing it as arbitrary or capricious or fraudulent or an abuse of discretion.   The Secretary's view that it was not just or equitable to include loss by a land purchase within the gratuity of the Government as defined by the statute must therefore prevail against mandamus.

*Lane* v. *Hoglund,* 244 U. S. 174, *Ballinger* v. *Frost,* 216 U. S. 240, *Garfield* v. *Goldsby,* 211 U. S. 249, *Roberts* v. *United States,* 176 U. S. 221, *Butterworth* v. *Hoe,* 112 U. S. 50, *United States* v. *Schurz,* 102 U. S. 378, were all cases in which the court found that all the conditions had been fulfilled upon which the relator in the mandamus was entitled to call upon the officer to do an act beneficial to the relator and that the act was thus a ministerial duty, as in the *Kendall Case.*

There is a class of cases in which a relator in mandamus has successfully sought to compel action by an officer who has discretion concededly conferred on him by law.  The relator in such cases does not ask for a decision any particular way but only that it be made one way or the other. Such are *Louisville Cement Company* v. *Interstate Commerce Commission,* 246 U. S. 638, and *Interstate Commerce Commission* v. *Humboldt S. S. Company,* 224 U. S. 474.  They follow the decision in  *Commissioner of Patents* v. *Whiteley,* 4 Wall. 522.  They are analogous to *Hohorst, Petitioner,* 150 U. S. 653; *Parker, Petitioner,* 131 U. S. 221; *Ex parte Parker,* 120 U. S. 737, and others which hold that mandamus may issue to an inferior judicial tribunal if it refuses to take jurisdiction when by law it ought to do so, or where, having obtained jurisdiction, it refuses to proceed in its exercise.  It is sought to bring the present case within this class by the averment in the petition that the Secretary of the Interior has refused to take jurisdiction of the claim for the loss of $9,600 through the real estate contract.  This aver-

ment is met by a denial in the answer and the affirmative allegation that the Secretary did consider the claim and disallowed it for cause deemed by him to be good. This mandamus was granted by the courts below on demurrer to the answer. Its allegations must be taken as admitted. Moreover, it is clearly shown by the exhibits to the pleadings that the Secretary decided that on its merits the claim was not for the kind of loss which Congress intended the Secretary to reimburse.

Our conclusion makes it unnecessary for us to consider the contention of the Government that the relator here is estopped to urge the present claim by his acceptance of the award already made.

*Reversed.*