**AGUILERA v. ICKES, Secretary of the Interior.**

**No. 5763.**

Court of Appeals of the District of Columbia.

Argued May 3, 1933.

Decided June 12, 1933.

Rehearing Denied June 29, 1933.

P. H. Loughran, of Washington, D. C., for appellant.

O. H. Graves, V. H. Wallace, and Charles Fahy, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

Prior to 1918, appellant company Aguilera y Compania, a Cuban corporation, was engaged in the business of producing manganese ore in Cuba, near Santiago. It owned and operated two mines, known as the Ysabelita and the Ponupo, situated adjacent to the Cuba railroad at El Cristo. The Ysabelita mine was situated about four miles from the railroad, and the ore was hauled to the railroad in ox and mule carts, where it was loaded on railroad cars, for movement to Santiago.

The company consisted of Charles F. Rand, Pedro Aguilera, and Eugenio Aguilera. It appears that Mr. Rand, during 1917 and 1918, was called to Washington by representatives of the United States Shipping Board and the Interior Department to give information as to Cuban deposits of chrome and manganese ores, and to use his influence to stimulate production of these ores in Cuba. In February, 1918, two agents of the United States Shipping Board and the Interior Department went to Cuba, and requested appellant company to begin the production of manganese ore for the United States, and advised the construction of a railroad from the Ysabelita mine to connect with the Cuba railroad at El Cristo.

Appellant company proceeded upon the request of the agents of the government to construct the railroad and furnish ore from its mines. This work continued from February 18, 1918, to November 11, 1918, the date of the Armistice.

A claim was submitted on May 26, 1919, by appellant company acting through Charles F. Rand, its vice president and treasurer, for an award of $104,922.83, representing the cost of constructing its railroad, together with certain expenses incident to its trans-

portation facilities. The claim was rejected by the Secretary of the Interior, and on February 13, 1930, suit in equity was instituted in the Supreme Court of the District of Columbia under the act of February 13, 1929, 45 Stat. 1166.

From a decree dismissing the bill this appeal was taken.

Section 5 of the act of March 2, 1919, 40 Stats. 1274 (50 USCA § 80 note), under which the claim was originally filed, among other things provides: "That the Secretary of the Interior be, and he hereby is, authorized to adjust, liquidate, and pay such net losses as have been suffered by any person, firm, or corporation, by reason of producing or preparing to produce, either manganese, chrome, pyrites, or tungsten in compliance with the request or demand of the Department of the Interior, the War Industries Board, the War Trade Board, the Shipping Board, or the Emergency Fleet Corporation to supply the urgent needs of the Nation in the prosecution of the war."

■ It is contended by appellant that the request to build a railroad and other appliances should be regarded as separate and distinct from the request to produce ore. It is urged that the company was making large profits prior to the time that it was requested to construct the railroad and other appliances, and that the losses which it sustained in the transaction through the building of the railroad should not be offset against its profits from the mining and production of the ore. We are not impressed by this contention. The Secretary of the Interior, or his agents, were not authorized under the act to request or demand the construction of a railroad as an independent agency. It could only be requested as an adjunct or aid in the producing of ore, and its cost could only be regarded as a part of the expenses incurred in the producing the ore. In computing the net losses, therefore, the loss resulting from the construction of the railroad and appliances must be considered as a part of the entire operation of producing or preparing to produce manganese.

■ This was the view taken by the War Minerals Relief Commission when considering this case. Taking the loss sustained from constructing the railroad and its appliances and treating it as an expense in the producing of the ores, the commission found as a fact, which is controlling here, that the "statements submitted by the claimant show that the net loss of the Ysabelita mine and railroad from February 18, 1918, to November 11, 1918, was $22,949.04, but that the net result of operations at both the Ysabelita and the Ponupo mines was a profit of $94,-544.71." Based upon this finding of fact, the commission held "that no net loss was sustained by the claimant in its operation in producing manganese, either during the entire period of the war, or during the period after stimulation and the signing of the Armistice."

In other words, the commission treated the operation of the Ysabelita and the Ponupo mines as a single transaction. In this conclusion we agree. The government, in promoting stimulation, was dealing with a single company owning two mines located nine miles apart. The act of stimulation extended to both mines, and called upon appellant company to use the best means and facilities under its control to produce manganese for the use of the United States. Nowhere does it appear that there was any intention to treat the Ysabelita mine and the construction of the railroad as separate enterprises, nor is there any evidence in the record that it was so understood by appellant company during the stimulation period from February 18, 1918, to the date of the Armistice, November 11, 1918.

Under the 1929 act permitting a claimant to proceed in equity in the Supreme Court of the District of Columbia for a review of the action of the Secretary in disallowing his claim, the findings of fact by the commission in the case upon which the Secretary based his decision are made final and conclusive upon the court. This limits us, in the present case, to the single question of whether or not as a matter of law the Secretary erred in treating the operation and production of the two mines as a single transaction. We agree with the conclusion reached by the Secretary.

Other questions have been raised in this case, namely, as to whether or not a foreign company or citizen would be entitled to make a claim under the provisions of the War Minerals Relief Act (Act March 2, 1919 [50 USCA § 80 note]); also whether the appellant company, appearing here in the name of the surviving partner, is in fact a partnership or a corporation. It is unnecessary for us to consider these questions, since in the absence of any net loss no cause of action exists, and this conclusively disposes of the case.

The decree is affirmed.