**CROWLEY v. ICKES, Secretary of the Interior.**

**No. 7166.**

United States Court of Appeals for the District of Columbia.

Decided Oct. 2, 1939.

James E. Trask, of St. Paul, Minn., and T. S. Plowman, of Washington, D. C., for appellant.

.Nathan R. Margold, Sol., and Jackson E. Price, Asst. Sol., both of the Department of the Interior, for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

This case arises under the War Minerals Relief Act.[1] It involves a claim for losses alleged to have been suffered by The Merritt Development Company during the period of the World War as a result of mining operations carried on under government stimulation. Loss was claimed in the amount of $665,926.33. The Secretary of the Interior made an award of $17,-585.07 but disallowed the remainder of the claim. Appellant, Receiver of The Merritt Development Company, petitioned the lower court for a review of the Secretary's decision.[2] That court directed the Secretary to reexamine some items of the claim and dismissed appellant's petition as to the others. This appeal is from that part of the decree which dismissed the petition and held that as to the items last mentioned the adjudication made by the Secretary of the Interior was proper.

The War Minerals Relief Act, as amended,[3] makes the decision of the Sec-

---

[1] Act of March 2, 1919, 40 Stat. 1272, as amended by Act of November 23, 1921, 42 Stat. 322, 50 U.S.C.A. § 80 note.

[2] See Act of February 13, 1929, 45 Stat. 1166.

[3] Act of March 2, 1919, 40 Stat. 1272, as amended by Act of February 13, 1929, 45 Stat. 1166.

retary of the Interior on all questions of fact "conclusive and not subject to review by any court"; but provides that judicial review may be had of his final decision upon any question of law. If the Secretary's decision in the present case, therefore, concerning any item, rests upon an erroneous conclusion as to a point of law it is subject to review.[4] On the other hand, if his decision is based upon a determination of fact and is consistent with the law governing the question, we must assume that he has properly performed his duty. Under such circumstances his decision is conclusive.[5]

An examination of the Secretary's decision reveals that, as to two items of loss claimed on this appeal, it is based upon an erroneous interpretation of the applicable law. The first item is for taxes paid on the property involved during the years 1917 and 1918. It is admitted that the period of stimulation covered the time for which the taxes were assessed and within which they were paid. Upon this point the Secretary's decision reads as follows: "Claimant objects to deduction of the item of taxes for the years 1917 ($14,845.15) and 1918 ($18,073.37) a total of $32,918.52. It is insisted that this is an ordinary operating expense necessarily incurred in carrying on the business; that the taxes on this property for 1916 were only $2,687.84 and that the levy was increased as the result of expanded development and augmented production, all of which was directly due to Government stimulation. Commenting on this item the Commissioner said: 'The charge for taxes is deducted because under the terms of the lease, taxes and minimum royalty would have been exacted from claimant even though there had been no Government interference.' The Department believes where an increase of taxes occurs because of expansion of an operation as a result of stimulation that the increased assessment or levy should be treated as an allowable operating expense. It appears, however, that under the Minnesota laws (sections 1972, 1979, and 1988, compiled laws of Minnesota, 1913) taxes on mineral property are determined by the amount of ore proven, etc. Late in 1916 and early in 1917 prior to stimulation claimant had proven the ore body on the High Grade lease. In fact drilling on the High Grade property commenced in the fall of 1914. Ore was mined therefrom in marketable quantities as early as February, 1917, and there was very substantial development on the property prior to April 16, 1917. Apparently, however, the 'drillings' which had proven the lease, not having been filed with the tax commission or other proper authorities, the taxes remained at a nominal figure. On the property being opened up in the spring of 1917 the tax assessor ascertained the approximate tonnage of the lease and acted accordingly. See section 1989, Laws of Minnesota, 1913. So far as the record shows the development policy inaugurated in 1916 remained in the main unaffected by stimulation. There was a decided change in the policy and important extensions were made after Merritt's visit to Washington in March, 1918. Additional shafts were sunk and a much larger tonnage assured. Under the circumstances it would appear that the difference in taxes between the years 1917 and 1918, $3,228.22, should be considered."

It will be noted from the excerpt quoted that the Secretary adopted as a statement of the applicable law that " * * * where an increase of taxes occurs because of expansion of an operation as a result of stimulation * * * the increased assessment or levy should be treated as an allowable operating expense"; and determined as a fact that expansion of operations resulted from stimulation in March, 1918. The Secretary relies upon our decision in Wilbur v. United States ex rel. Chestatee Pyrites & Chemical Corp.[6] to support his

---

[4] Wilbur v. United States ex rel. Chestatee Pyrites & Chemical Corp., 288 U. S. 97, 100, 53 S.Ct. 293, 77 L.Ed. 638.

[5] Crimora Manganese Corp. v. Wilbur, 60 App.D.C. 55, 58, 47 F.2d 417, 420, certiorari denied 283 U.S. 861, 51 S.Ct. 654, 75 L.Ed. 1466; Aguilera v. Ickes, 62 App.D.C. 226, 227, 66 F.2d 206, 207, certiorari denied, 290 U.S. 684, 54 S.Ct. 121, 78 L.Ed. 590. See Work v. United States ex rel. Rives, 267 U.S. 175, 181, 182, 45 S.Ct. 252, 69 L.Ed. 561; Tutun v. United States, 270 U.S. 568, 576, 577,

46 S.Ct. 425, 70 L.Ed. 738; Ex Parte Bakelite Corp., 279 U.S. 438, 451, 452, 49 S.Ct. 411, 73 L.Ed. 789; Murray's Lessee v. Hoboken Land and Imp. Co., 18 How., U.S., 272, 284, 15 L.Ed. 372. Cf. Luckenbach Steamship Co. v. United States, 272 U.S. 533, 537, 538, 47 S.Ct. 186, 71 L.Ed. 394; United States v. Esnault-Pelterie, 303 U.S. 26, 58 S.Ct. 412, 82 L.Ed. 625.

[6] 61 App.D.C. 212, 213, 59 F.2d 887, 888.

statement of law and his determination of this item. However, that decision says nothing about *expansion of operation*. In fact, it states an entirely different rule, which if literally applied would require an allowance of the total increase of taxes paid—approximately $26,000. In that case we said: " * * * the difference between the tax paid on property embraced in this governmental enterprise prior to the stimulation period and the tax paid during that period on the same property * * * " should be treated as a proper item in the determination of net loss. However, the formula thus stated was intended to be applied to the facts of that case. It was not intended, thereby, to substitute a legal formula—as a rule of universal application—in place of the fact determination required to be made by the Secretary.

■ In this case it is his duty to consider the item of taxes paid and to determine as a matter of fact what part thereof, if any, constituted net loss suffered by reason of good faith expenditure of money in "producing or preparing to produce, either manganese, chrome, pyrites, or tungsten in compliance with the request or demand of the Department of the Interior * * * ."[7] Stimulation being admitted as of April 16, 1917, there is no more reason for requiring expansion of an operation as a test of good faith expenditure, in the case of taxes paid, than in the case of any other item of expense. Consequently, the Secretary's adjudication of this item cannot stand.

■ Again, in our view, the Secretary's adjudication concerning the cost of a public accountant's report is based upon an erroneous interpretation of the applicable law. As to this item, the decision of the Secretary reads as follows: "Marwick, Mitchell, public accountants' report, 1915. Counsel for claimant insists that this item is foreign to any promotion expenses or any expenses in connection with the sale of stock; that the report was required by bonding company before furnishing bonds for the claimant company's treasurer. It is noted in this regard, however, that the Merritt Development Company was organized in June, 1914, and a treasurer chosen at that time. Apparently the report in question was not requested prior to 1918 and was not made until April of that year. The accounts of the company were audited for the period of June 2, 1914, the date of incorporation, to December 31, 1917. There is nothing in the report to indicate that it was prepared for the purpose of satisfying a bonding company. The report is merely a complete resume of the history, organization, operation and accounts, together with balance sheet, etc., for the period before mentioned. Under the circumstances it could only be inferred that it was for the information and enlightenment of the officers and stockholders. It is observed that a similar report was made by Richard Dougherty and Company for the period of January 1, 1918, to December 31, 1918. Under the circumstances this item is believed inadmissible as a legitimate operating expense(s) within the meaning of the relief act."

From the Secretary's statement it appears, therefore, that the report covered the operations of the company during a portion of the period of stimulation; it was requested during the year 1918 and made in April of that year—both during the period of stimulation. Rejection of the item is based upon a conclusion of law applied to the facts as stated, *i. e.*, "Under the circumstances this item is believed inadmissible as a legitimate operating expense(s) within the meaning of the relief act." But an audit and report on the financial and other conditions of a business may be vitally essential to its proper management. Failure to obtain such an audit may, in a particular case, be a violation of the duty of the corporate officers properly to administer the corporate affairs. Certainly, it cannot be said, as a rule of law, that an audit for the information of those directing the affairs of a corporation is a matter foreign to the legitimate operation of the enterprise. Consequently, the decision of the Secretary as to this item cannot stand.

We have examined each of appellant's other assignments and contentions and find them to be without merit. A careful reading of the Secretary's decision, and of the memorandum of the lower court, reveals that the decision—so far as concerns each of the remaining items presented on this appeal—was not rested upon a mistaken interpretation or application of the law. Under the circumstances, the decision of the Secretary, as to these items, being based upon determinations of fact, is conclusive.

---

[7] 40 Stat. 1272, as amended, 42 Stat. 322, 50 U.S.C.A. § 80 note.

The decree of the lower court and the decision of the Secretary will be modified as indicated herein.

Modified and, as modified, affirmed.