**DAVIS ASSOCIATES, INC.,**
Plaintiff, Appellant,

v.

**SECRETARY, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,** and Dover Housing Authority, Defendants, Appellees.

No. 74–1149.

United States Court of Appeals,
First Circuit.

Submitted June 5, 1974.

Decided June 28, 1974.

David A. Brock, Concord, N. H., with whom Perkins, Douglas & Brock, Concord, N. H., was on brief, for appellant.

Joseph M. Corwin, Boston, Mass., with whom Corwin & Corwin, Boston, Mass., and Donald R. Bryant, Dover, N. H., were on brief, for Dover Housing Authority, appellee.

Robert A. Schwartz, Asst. U. S. Atty., with whom William J. Deachman, U. S. Atty., and David Sonenshein, Atty., Office of Regional Counsel, Dept. of Housing and Urban Development, Concord, N. H., were on brief, for Secretary, Dept. of Housing and Urban Development, appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

Davis Associates brought this action in the district court for equitable relief contending, in essence, that the defendants abused their statutory discretion in rejecting its bid for the main contract on a federally-assisted housing project. The district court dismissed the action on the ground that defendants' rejection of the bid was not "reviewable." We affirm the dismissal, but base our decision on a somewhat different line of reasoning.

The facts are not in dispute. In early 1973 the Dover (N.H.) Housing Authority (hereinafter "the Authority") reached a preliminary agreement with the Department of Housing and Urban Development (hereinafter "HUD") on a proposed hundred-unit housing project for the elderly that would be supported by federal loans under the provisions of

the United States Housing Act of 1937, 42 U.S.C. § 1401 et seq. (1970). The Authority thereafter invited bids on the project, but expressly reserved the right to reject any and all bids so received. When no bid came in below HUD's initial cost estimate, known as the prototype cost, the Authority was permitted to enter negotiations with the three lowest bidders, one of whom was Davis. In the course of negotiations, one of the two other bidders withdrew and the second one was disqualified for reasons not relevant here. On September 19, 1973, the Authority voted to award the contract to Davis subject to the approval of HUD. The negotiated award price was still higher than HUD's initial estimate. On September 25, HUD notified the Authority that it would not approve the award to Davis because of (1) "considerable confusion" which it found in the negotiations, (2) the possibility of litigation by the disqualified bidder and (3) the possibility that "considerable savings" would result if the project were redesigned and rebid. Davis responded by arranging a meeting with HUD to seek reconsideration of its rejection. After the meeting HUD agreed to modify its decision "to the extent that the Dover Housing Authority may, at its discretion, resubmit its previous recommendation to HUD to award the construction contract to [Davis]." HUD noted that if the Authority chose to resubmit the recommendation there was still no guarantee that it would change its prior

decision and approve. However, HUD never had to reconsider because the Authority voted not to resubmit the Davis award. It informed Davis that it was rejecting all the initial bids and would redesign and rebid the project as HUD had initially suggested.

Davis filed the instant action against the Secretary of HUD and the Authority. The complaint was styled "a petition in equity requesting review and/or trial *de novo* of certain decisions and rulings of a federal administrative agency made by it under and pursuant to Title 42 U.S.C.A., § 1401 et seq." It alleged that the defendants' actions constituted a "breach of good faith and an arbitrary, capricious and gross abuse of their discretion in the performance and administration of their duties under the laws of the United States, and [that] said action [was] not in the best interest of the government and in other ways not in accordance with the law."[1] The principal relief sought was an order "requiring the defendants to show cause why [the] contract should not be immediately awarded" to Davis.

The district court recognized that "[t]he essence of Davis' complaint is that HUD's disapproval of the negotiated bid and the [Authority's] decision not to resubmit the Davis bid after HUD's disapproval was conditionally withdrawn were both arbitrary, capricious, and an abuse of discretion." The court then engaged in a three-part analysis under the headings of "jurisdic-

---

1. Davis, in a subsequent memorandum to the court, explained *how* the action constituted an abuse of discretion:

"In addition to the foregoing, Davis will, at a hearing on the merits, present evidence from a number of sources to support its contention that the September 25, 1973, decision of HUD to reject bids and the post-November 5, 1973 failure of [the Authority] to proceed with the award of the contract to Davis were decisions which, rather than being in the best interests of the government, [the Authority] and the public, were so contrary to their collective and individual interests that as a matter of fact and law they constitute an arbitrary abuse of discretion.

"Evidence will indicate that these decisions may have effectively prevented the ultimate approval of this Project by HUD, upon re-bidding.

"In keenly competitive bidding, Davis' bid for this project was dangerously close to statutory limits, in the form of prototype costs, imposed by Congress. Substantial industry-wide materials and labor costs increases during the past few months will most likely result in new bids exceeding the statutory limitation. One hundred desperately needed elderly housing units will be lost to citizens of Dover, New Hampshire should this occur."

tion," "standing," and "reviewability." Initially, the court found subject-matter jurisdiction by treating the rather inartful complaint as both an action in the nature of mandamus under 28 U.S.C. § 1361 (1970), and, alternatively, as a petition seeking judicial review of HUD's and the Authority's administrative determinations under the Administrative Procedure Act (hereinafter "APA") § 10, 5 U.S.C. § 701 et seq. (1970).[2] With respect to standing, the court held that an "unsuccessful bidder" such as Davis could assert the instant claim. Merriam v. Kunzig, 476 F.2d 1233, 1240 (3d Cir.), cert. denied, Gateway Center Corp. v. Merriam, 414 U.S. 911, 94 S.Ct. 233, 39 L.Ed.2d 149 (1973). The final consideration was "whether the agency action complained of is reviewable by this court." Here, the court implicitly abandoned its previous analysis of the complaint as separately seeking both mandamus and judicial review, and focused solely on the latter question. After considering the relevant statutes and regulations, plus the type of determination it would have to make if it did grant review,[3] the court held that the actions complained of were not reviewable and therefore dismissed the complaint.

Davis appeals from the determination of nonreviewability and HUD and the Authority, as appellees, challenge the court's holdings on jurisdiction and standing. We think the court's dismissal was essentially correct. However, the court appears to have confused its analyses of the right to mandamus as opposed to the right to judicial review. Although closely related, the two concepts are different. A party may be entitled to judicial review under the APA even where mandamus might not lie under § 1361. Therefore, we will briefly review these issues separately.

Section 1361 provides that district courts "shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." In mandamus actions, the usually separate questions of jurisdiction and failure-to-state-a-claim merge. There can be no mandamus jurisdiction if no "duty" exists on the part of the defendants. On the other hand, if a duty does exist, then not only is there jurisdiction under § 1361 but plaintiff has also adequately stated a claim in asking that such duty be fulfilled. *See* Ashe v. McNamara, 355 F.2d 277 (1st Cir. 1965).

Thus, in a highly technical sense, the district court erred in finding subject-matter jurisdiction under § 1361 in this case, because its subsequent analysis of the statutory materials under the heading of "reviewability" conclusively demonstrated that the defendants had no "duty" to award the contract to Davis. Both the statute and the regulations are written in discretionary terms. They generally leave to HUD and the local housing authorities the assessment of

---

**2.** However, the court also determined that the complaint did not state a cause of action "arising under" any federal statute or regulation, so as to provide an alternative source of jurisdiction in 28 U.S.C. § 1331 (1970). For reasons stated *infra* this was error.

**3.** The court stated in pertinent part:
    "The underlying issues involve consideration of the factors relevant to the Project prototype cost, since HUD's decision not to approve was at least partially predicated on 'the opinion that considerable savings might possibly result if the Project were to be redesigned.' Exhibit 18. These issues necessitate inquiry into construction costs, compliance with applicable FHA standards

and other factors particularly ill-suited to court adjudication. 24 C.F.R. § 275, Appendix A. In addition, any decision to commit federal funds to the [Authority] would have to weigh the importance of that Project against other projects competing for limited federal resources. The expertise necessary to a responsible decision of this nature is demonstrated by the two-inch thick set of specifications (Exhibit 2) and the one hundred page [Annual Contributions Contract] (Exhibit 1) which govern this project. Under these circumstances, to paraphrase [Hahn v. Gottlieb, 430 F.2d 1243, 1249 (1st Cir. 1970)] I willingly confess my incapacity to contribute intelligently to the problem."

competing bidders, within, of course, certain outer parameters of acceptability.[4] The existence of some fixed requirements means that the area of contract awards is not totally shut off from mandamus relief. Instead, in each case we must measure the allegations in the complaint against the statutory and constitutional framework to determine whether the particular official actions complained of fall within the scope of the discretion which Congress accorded the administrators. *See* Work v. United States ex rel. Rives, 267 U.S. 175, 177–178, 45 S.Ct. 252, 69 L.Ed. 561 (1925); Ashe v. McNamara, *supra*; Murray v. Vaughn, 300 F.Supp. 688, 696–697 (D. R.I.1969); Byse & Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action, 81 Harv.L.Rev. 308, 333–35 (1967).[5] Here, the allegation is that defendants abused their discretion in not awarding the contract to Davis, a qualified bidder. The only supporting argument as to why this action constituted an abuse is that costs are rising so quickly that the delay at-

tendant to redesign and rebidding *may* prevent the "desperately needed" housing project from ever being completed. *See* note 1 *supra*. First of all, the statute does not require that this particular project be built. Second, the statute clearly leaves the inflation determinations to HUD and the local authorities. Therefore, there was no "duty" to award the contract to Davis and thus no mandamus jurisdiction.

■ Also, Davis was not entitled to judicial review of the administrative determinations which lay behind the rejection of its bid. We note that we need not review the court's holding that the APA is in itself a source of jurisdiction,[6] because in any event the question of whether the APA authorizes judicial review under these particular facts is one "arising under" federal law and thus covered by 28 U.S.C. § 1331 so long as there is at least $10,000 in controversy.[7] In the instant case, although not expressly alleged, Davis' anticipated profits on the roughly $2,500,000 project certainly must exceed $10,000.

4. For example, 42 U.S.C. § 1415(5) (1970) precludes awarding a contract on any bid which exceeds by more than 10 per cent HUD's initial prototype cost. Davis' bid, although higher than the prototype cost, did not exceed it by more than 10 per cent. Therefore, awarding the contract to Davis was not barred by the statute. This does not mean, however, that awarding the contract to Davis was commanded by the statute.

5. In other words, even in an area generally left to agency discretion, there may well exist statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised. In these situations, mandamus will lie when the standards have been ignored or violated. As this court demonstrated in Ashe v. McNamara, *supra*, the same would also be true when the agency's exercise of discretion exceeded constitutional limitations. The Second Circuit· expressed essentially the same concept when it noted that even in discretionary areas official conduct may sometimes go "so far beyond any rational exercise of discretion as to call for mandamus." United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371, 374 (2d Cir. 1968), cert. denied,

394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969). *See also* National R. R. Passenger Corp. v. National Ass'n of R. R. Passengers, 414 U.S. 453, 94 S.Ct. 690, 696–697, 38 L. Ed.2d 646 (1974) (Brennan, J., concurring).

6. This court has never decided this question. *See* Friedman v. Froehlke, 470 F.2d 1351, 1352 n. 1 (1st Cir. 1972). Other courts have split. *See* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart and Wechsler's The Federal Courts and the Federal System 1161 & n. 6 (1973), and cases and authorities cited therein.

7. A case arises under federal law within the meaning of § 1331 "where an appropriate statement of the plaintiff's cause of action, unaided by any anticipation or avoidance of defenses, discloses that it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of a law of Congress." Hopkins v. Walker, 244 U.S. 486, 489, 37 S.Ct. 711, 713, 61 L.Ed. 1270 (1917). In view of our holding that the claim asserted under the APA entitles the plaintiff to § 1331 jurisdiction, we need not reach Davis' alternative contention that federal procurement regulations apply to this case and for that reason entitle it to § 1331 jurisdiction.

 Turning to the merits, we hold that the APA does not authorize judicial review here. Therefore, Davis failed to state a claim. Although there is a presumption of review expressed in APA § 10(a), 5 U.S.C. § 702 (1970), *see* Hahn v. Gottlieb, 430 F.2d 1243, 1249 (1st Cir. 1970), that presumption will be overcome by clear and convincing evidence that Congress intended to cut off review above the agency level. *Id. See* APA § 10 (introductory clause), 5 U.S. C. § 701(a) (1970). In *Hahn*, this court adopted a three-factor inquiry for determining when Congress intended to preclude review: (1) the appropriateness of the issues raised for review by the courts; (2) the need for judicial supervision to safeguard the interests of the plaintiffs; and (3) the impact of review on the effectiveness of the agency in carrying out its assigned role. *See* Saferstein, Nonreviewability: A Functional Analysis of "Committed to Agency Discretion," 82 Harv.L.Rev. 367, 371 (1968). As the district court found, *see* note 3 *supra*, the issues presented here are not appropriate for judicial review. They turn on matters of social policy and economic forecasting. Also, the need for judicial supervision to safeguard the interests of Davis is not apparent. Unlike the low-income housing tenants in *Hahn*, Davis has considerable bargaining power with the agencies. The record of its negotiations to date demonstrates that. Finally, the impact of review on decisions to award housing contracts can only be "dilatory," as the district court observed. While such delay might be tolerable where HUD had

allegedly violated some inflexible requirement of its own regulations or the statute, *cf.* Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970), here the balance of factors points in only one direction, namely, no review of the decision to reject Davis' bid.[8]

In view of these holdings, we need not reach the issue of standing. *But see* Scanwell Laboratories, Inc. v. Shaffer, *supra*.

Affirmed.

---

8. Appellant's contention that APA § 10(e), 5 U.S.C. § 706 (1970), somehow alters or makes irrelevant the analysis applied in *Hahn* is without merit. Section 706 authorizes reviewing courts to set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." But the section must be harmonized with § 701, which bars application of the APA to the extent that "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." The *Hahn* analysis is intended to carry out that harmonization.

*See generally* Saferstein, Nonreviewability: A Functional Analysis of "Committed to Agency Discretion," *supra*:

> "Even assuming that courts have the prestige and power to remedy all such abuses when found, to demand that courts give review whenever a complainant utters the formula 'abuse of discretion' is to hazard a serious misallocation of judicial resources as well as a stifling of agency and congressional programs. The capacity of individuals to bring frivolous claims cannot be overlooked."

*Id.* at 374–75.