UNITED STATES of America, Plaintiff,

v.

TOM–KAT DEVELOPMENT,
INC., Defendant.

No. A84–048 Civil.

United States District Court,
D. Alaska.

March 26, 1985.

Michael R. Spaan, U.S. Atty., Anchorage, Alaska, for plaintiff.

Robert Casey, Anchorage, Alaska, for defendant.

## OPINION

FITZGERALD, Chief Judge.

In this case, the United States of America (the government) seeks damages for defendant's (Tom-Kat's) alleged violations of § 301(a) of the Clean Water Act (CWA or Act), 33 U.S.C. § 1311(a), brought about during Tom-Kat's operation of a placer mine near Ferry, Alaska. On September 19, 1984, Tom-Kat filed a motion for summary judgment as to both liability and damages. On November 7, 1984, the government cross-moved for summary judgment solely on the issue of Tom-Kat's liability.

Hearing was held on Tom-Kat's summary judgment motion on February 19, 1985. After considering the arguments presented, the papers submitted and the pertinent case law, I conclude that Tom-Kat is precluded from a grant of summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.*, 707 F.2d 1030, 1033 (9th Cir.1983).

In 1972, Congress amended the Federal Water Pollution Control Act, renamed the statute the Clean Water Act, and, for the first time preempted the states in regulating water pollution. The goal of the CWA is to eliminate the discharge of pollutants into navigable waters. 33 U.S.C. § 1251(a) and (b). Except as permitted under certain

exceptions, "the discharge of any pollutant by any person shall be unlawful." *Id.* § 1311(a). One exception is granted for discharges allowed by a National Pollutant Discharge Elimination System (NPDES) permit issued by the Environmental Protection Agency (EPA). *Id.* § 1342. The "discharge of a pollutant" is defined as "any addition of any pollutant to navigable waters from any point source" Id. § 1362(12). Every identifiable point that emits pollution is a point source which must be authorized by a NPDES permit issued by EPA. *United States v. Earth Sciences, Inc.,* 599 F.2d 368, 373 (10th Cir.1979); 40 C.F.R. § 122.-1(b)(1); *E.g. Legal Environmental Assistance Foundation, Inc. v. Hodel,* 586 F.Supp. 1163, 1168 (E.D.Tenn.1984); *United States v. Saint Bernard Parish,* 589 F.Supp. 617 (E.D.La.1984).

In support of its motion for summary judgment in this case, Tom-Kat argues that § 1342 of the CWA did not require Tom-Kat to obtain a NPDES permit before discharging any pollutants through its placer mining operations. Rather, it is argued, the Act merely created a discretionary duty in the Secretary to issue such permits. Because Tom-Kat allegedly made all reasonable efforts to secure the requisite permits from EPA, Tom-Kat claims it was entitled to continue its polluting activities free from liability under the provisions of the CWA.

■ A review of recent case law covering this aspect of the nation's water pollution law reveals that Tom-Kat has fundamentally misunderstood the broad goals of the CWA and the stringent provisions passed by Congress to enforce it. As Judge von der Heydt noted in *Kitlutsisti v. Arco Alaska, Inc.,* 592 F.Supp. 832 (D. Alaska 1984), the CWA's requirement that all discharges covered by the statute must have a NPDES permit "is unconditional and absolute. *Any discharge except pursuant to a permit is illegal." Id.* at 839 (emphasis added). *See Trustees for Alaska v. E.P.A.,* 749 F.2d 549, 558 (9th Cir. 1984); *Milwaukee v. Illinois,* 451 U.S. 304, 310–11, 101 S.Ct. 1784, 1788–89, 68 L.Ed.2d 114 (1981); *National Resources Defense*

*Council, Inc. v. Costle,* 568 F.2d 1369, 1375 (D.C.Cir.1977); *see also Weinberger v. Romero-Barcelo,* 456 U.S. 305, 319, 102 S.Ct. 1798, 1806, 72 L.Ed.2d 91 (1982).

■ Nor does the allegation that Tom-Kat made all good faith efforts to acquire the requisite permits from EPA absolve or reduce its potential liability for violations of the CWA. "The regulatory provisions of the [Clean Water Act] were written without regard to intentionality ... making the person responsible for the discharge of any pollutant *strictly liable." United States v. Earth Sciences,* 599 F.2d at 374 (emphasis added). *See also United States v. Saint Bernard Parish,* 589 F.Supp. at 619.

Because Tom-Kat is not entitled to a judgment as a matter of law, its motion for summary judgment must fail.

IT IS THEREFORE ORDERED that Tom-Kat's motion for summary judgment is DENIED.

DATED at Anchorage, Alaska, this 1st day of March, 1985.

## SUPPLEMENTAL OPINION

■ On March 1, 1985, I denied defendant Tom-Kat's motion for summary judgment as to Tom-Kat's potential liability for operation of a placer mining facility near Ferry, Alaska, without the requisite federal NPDES permit. In my Memorandum and Order, I rejected Tom-Kat's argument that its alleged good-faith efforts to acquire such a permit shielded it from liability for violations of the Clean Water Act (CWA or Act). On March 12, 1985, Tom-Kat indicated some uncertainty as to whether I had ruled on its claim that the government lacked standing to bring this lawsuit.

Standing is a threshold determination. "The requirement of standing 'focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated.'" *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 484, 102 S.Ct. 752, 765, 70 L.Ed.2d 700 (1982). In reaching the

merits of the claims brought by the government in this case, I implicitly concluded that the government possessed standing to bring an action against Tom-Kat for alleged violations of the CWA.

In so holding, I rejected Tom-Kat's intricate argument that § 309 of the Act,[1] when read in conjunction with its legislative history, divested the Environmental Protection Agency (EPA) of standing to bring suit against alleged violators of the CWA who had properly applied for a NPDES permit.[2] Section 309, entitled "Enforcement," establishes the responsibility of the Administrator of EPA to ensure that the requirements of the CWA are met.[3] In arguing that § 309 created a "liability shield" for Tom-Kat in suits brought by EPA,[4] Tom-Kat relies on the following reference to § 309 made in Senate Report No. 92–414:

> It should be noted that the Administrator is partially limited in acting under Section 301(a). The Administrator is precluded from acting where the allegation is for failure to acquire a necessary permit under Section 402, if the owner or operator of a discharge has filed an application for such required permit.... 

> The distinction between enforcement for violation of an unlawful discharge and enforcement for operating without a required permit under Section 402 is intended to cause the Administrator to act expeditiously to issue permits under Section 402....

S.Rep. No. 414, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad. News 3668, 3729–30.

Tom-Kat argues that this legislative history unequivocally demonstrates Congress' intent that EPA be divested of authority to sue alleged violators of § 402's permit requirements so long as "the owner or operator of a discharge has filed an application for such required permit." Claiming that it has filed for the requisite NPDES permit, Tom-Kat avers that § 309 completely shields it from government prosecution of its alleged unpermitted pollution discharges.

Although the statements made in Senate Report No. 92–414 about § 309 considered in a vacuum might lead to the conclusion that Congress created a major loophole in the strict permit requirements set forth in § 402 of the Act, plain reading of § 309's statutory language reveals no such broad exception. Indeed, the only language even remotely creating such a liability shield merely states that the Administrator of EPA may, *in his discretion,* grant a limited time extension within which an alleged violator must meet any effluent limitations promulgated pursuant to the Act's requirements.[5]

Tom-Kat's reliance on the scant legislative history of § 309 as sufficient proof that it was shielded from liability for contravention of § 402's requirement is misplaced. The Ninth Circuit has often noted that the legislative history should not be used as a guide if the statute's language is "plain and unambiguous on its face."

---

1. 33 U.S.C. § 1319(a)-(f) (1982).

2. In concluding that Tom-Kat's act of applying for the requisite federal permit did not statutorily prevent EPA from instituting this action against Tom-Kat, the court does not mean to imply it countenances EPA's apparent failure to process Tom-Kat's application in an expeditious manner. Had Tom-Kat petitioned the court for mandamus to require EPA to reach a determination on Tom-Kat's permit request, I may well have concluded such an action had merit. Tom-Kat did not seek such relief, however. *See, e.g., Work v. United States ex rel. Rives,* 267 U.S. 175, 45 S.Ct. 252, 69 L.Ed. 561 (1925); *Pattillo v. Schlesinger,* 625 F.2d 262 (9th Cir.1980).

3. This section also mandates various procedures the Administrator of EPA must follow in exercising the enforcement authority vested in him under the Act. *See, e.g., Work v. United States ex rel. Rives,* 267 U.S. 175, 45 S.Ct. 252, 69 L.Ed. 561 (1925); *Pattillo v. Schlesinger,* 625 F.2d 262 (9th Cir.1980).

4. Tom-Kat concedes that this provision in no way limits the standing of private citizens to bring enforcement actions under the "citizen suits" provision of the Act. *See* 33 U.S.C. § 1365 (1982).

5. *See* 33 U.S.C. § 1319(a)(5)(B)(iii) (1982).

*United States v. Mehrmanesh,* 689 F.2d 822 (9th Cir.1982); *see also United States v. American Trucking Associations,* 310 U.S. 534, 543–44, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940), where the Supreme Court noted that

> "[t]here is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning...."

In short, the proper function of legislative history is "to solve, not create, an ambiguity." *United States v. Rone,* 598 F.2d 564, 569 (9th Cir.1979). As no such ambiguity exists in § 309's terms, Tom-Kat's argument that this provision implicitly divested EPA of standing to sue for Tom-Kat's alleged violations of § 402 must fail.

Nor, as Tom-Kat conceded, does the limited liability shield *expressly* created in § 402 of the Act provide Tom-Kat with any limitation of liability here. Unlike § 309, subsection (k) of § 402 specifically provides that *"until December 31, 1974,* in any case where a permit for discharge has been applied for pursuant to this section, but final administrative disposition of such application has not been made, such discharge shall not be a violation of [the pertinent requirements] of the Act." 33 U.S.C. § 1342(k)(1982)(emphasis added). Plain reading of § 402, in direct contrast to § 309, reveals a congressional intent to create a limited liability shield for alleged violators of the Act who properly applied for the required NPDES permit up until December 31, 1974. Tom-Kat clearly does not fall within this limited liability provision, as it admittedly did not apply for a NPDES permit until 1979, four years after § 402's liability shield elapsed. *See* Affidavit of Burton Carver, President of Tom-Kat, at 2

(filed Sept. 19, 1984). Thus, the express language of § 402(k), like that of § 309, does not limit EPA's authority to seek judicial redress for Tom-Kat's alleged violations of the permit requirements of the CWA during the 1982 and 1983 mining seasons.[6]

---

**6.** In so holding, I note here that I have considered the cases cited by Tom-Kat as authority for its argument that EPA lacks standing in this case. In addition to being decisions from outside this circuit, I have found neither *United States v. GAF Corp.,* 389 F.Supp. 1379 (S.D.Tex.

1975), nor *United States v. Frezzo Brothers, Inc.,* 602 F.2d 1123 (3d Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980), to be dispositive of the standing issue raised by Tom-Kat.