ASSOCIATED BUSINESSES OF FRANKLIN, INC., dba Franklin Taxi, Plaintiff,

v.

WARREN COUNTY BOARD OF COUNTY COMMISSIONERS, et al., Defendants.

No. C–1–80–601.

United States District Court, S. D. Ohio, W. D.

Sept. 14, 1981.

Patrick D. Long, Franklin, Ohio, for plaintiff.

Halstead L. Stettler, Asst. Atty. Gen., Columbus, Ohio, Marvin N. Kolstein, James F. McDaniel, Elizabeth Gere Whitaker, Cincinnati, Ohio, for defendants.

## OPINION AND ORDER

SPIEGEL, District Judge:

This matter is before the Court on motions to dismiss or in the alternative for summary judgment filed by federal defendants and defendant Warren County Board of Commissioners (docs. 18 and 28), state and county defendants' motions for summary judgment (docs. 19 and 21), plaintiff's motion for summary judgment (doc. 23), and memos in opposition to defendants' motions (docs. 21 and 29), and affidavits and exhibits submitted by all parties. Plaintiff alleges jurisdiction under the Urban Mass Transportation Act (UMTA), 49 U.S.C. §§ 1601 *et seq.*; the Administrative Procedure Act (APA) 5 U.S.C. § 702, 28 U.S.C. § 1361; Article III, Section 2 of the United States Constitution and the Fifth and Fourteenth Amendment to the United States Constitution. For the reasons set forth below, it is the conclusion of the Court that plaintiff's motion for summary judgment should be denied and defendants' motions for summary judgment should be granted.

This is an action whereby plaintiff, Associated Businesses of Franklin, dba Franklin Taxi, has challenged defendants' award of a rural transportation grant under the UMTA to defendant Warren County Board of Human Services. Plaintiff claims that defendants violated the UMTA and regulations issued pursuant to the Act. 28 C.F.R. Part 825. Defendants deny any violations and counter that this Court lacks jurisdiction and that plaintiff does not have standing to assert any claim against these defendants.

In 1964, Congress enacted the Urban Mass Transportation Act. The stated purpose of the UMTA is:

1) to assist in the development of improved mass transportation facilities, equipment, techniques and methods with the cooperation of mass transportation companies, both public and private;

2) to encourage the planning and establishment of areawide urban mass transportation systems needed for economical and desirable urban development with the cooperation of mass transportation companies both public and private; and

3) to provide assistance to state and local government and their instrumentalities in financing such systems, to be operated by public or private mass transportation companies as *determined by local needs.* 49 U.S.C. § 1601(b). (Emphasis added.)

Congress amended the UMTA in 1978 to expand assistance to rural areas. 49 U.S.C. at § 1614. The provisions of the amendment provide for yearly grants to states to be used for "public transportation services in areas other than urbanized areas." All state programs are submitted to the Secretary of Transportation for approval. Section 1602(e)(2) directs that no financial assistance may be provided under the UMTA unless the Secretary finds that such a program "to the maximum extent feasible, provides for the participation of private mass transportation companies." Additionally, each state must issue certain "assurances" to the Federal Highway Administration contained in 23 C.F.R. Part 825, Appendix B. For purposes of this litigation the pertinent sections of the Regulations follow:

A) The applicant has the requisite financial managerial and legal capacity to carry out the Section 18 program and to receive and disburse Federal funds.

E) Private transit and paratransit operators have been afforded a fair and timely opportunity to participate to the maximum extent feasible in the provision of the proposed transportation services by the applicant.

G) The applicant has demonstrated acceptable efforts to achieve coordination with other transportation providers and users, including social service agencies capable of purchasing services.

The Ohio Department of Transportation (ODOT) was designated by the Governor to receive and administer available federal funds for a rural transportation system. ODOT received two applications from War-

ren County for capital assistance and operating assistance grants under § 1614. On July 25, 1980 ODOT forwarded the applications to the Federal Highway Administration (FHWA) for approval pursuant to the regulations found in 23 C.F.R. Part 825. At that time no operator had been selected and approved by the Warren County Board of Commissioners so that all budget figures were estimated. The County had established a Transportation Advisory Committee to assist in the selection of a program operator. Plaintiff's president, Mr. George Bundick, served as a member of the Committee. The County also established a bidding process for the selection of a program operator. Two bids were submitted to the County; one from the plaintiff and the other from defendant Warren County Human Services Board which was ultimately selected by the Warren County Board of Commissioners as the transportation system operator.

The original application from Warren County contained the required assurances and supporting data but did not name the proposed systems operator. While reviewing the application the FHWA learned that the Warren County Human Services Board had been selected and that there had been complaints from private transportation providers. FHWA inquired of ODOT whether processing of the Warren County applications should continue. ODOT deferred recommendation until revised budget figures were received from the County Commissioners. ODOT thereafter received and sent revised budget figures to FHWA along with information that set forth the efforts, including the bidding process, made by the County Commissioners to allow private transportation providers an opportunity to participate in the Warren County program. ODOT then reaffirmed its recommendation of the Warren County application with the Human Services Board as the designated system operator. FHWA reviewed the applications to ensure that all federal statutory and regulatory requirements had been met and approved the Warren County application on September 26, 1980. This lawsuit was filed on November 6, 1980.

### A. 49 U.S.C. § 1601

Plaintiff alleges jurisdiction under the Urban Mass Transportation Act, 49 U.S.C. §§ 1601 *et seq.* There is no provision in the UMTA for a private party to seek judicial review of any portion of the Act. The question therefore is whether a private cause of action in favor of plaintiff may be implied. Because we find there is no private cause of action on behalf of the plaintiff, we would not have to decide the broader question, whether this action "arises under" the laws of the United States so as to give this Court jurisdiction under 28 U.S.C. § 1331. *Universities Research Association v. Coutu, et al.,* 450 U.S. 754, 767, 101 S.Ct. 1451, 1460, 67 L.Ed.2d 662 (1981). It should be noted, however, that for purposes of federal jurisdiction plaintiff must assert a federal right as an essential element of his cause of action. *Local Division 1285, Amalgamated Transit Union v. Jackson Transit Authority,* 650 F.2d 1379 (6th Cir. 1981). We find that plaintiff has asserted no federal right guaranteed to it under this statute so as to give this Court subject matter jurisdiction.

The United States Supreme Court has recently stated that it adheres to a strict standard for the implication of a private cause of action. *Touche Ross v. Redington,* 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979). The Court noted that in cases finding an implied remedy, the statute in question either prohibited certain conduct or created federal rights in favor of private parties. *Id.* at 569, 99 S.Ct. at 2485. The Court stated: "The ultimate question is one of congressional intent, not one of whether this Court thinks that it can improve on the statutory scheme that Congress enacted into law." *Id.* at 578, 99 S.Ct. at 2490. The four factors set forth in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975) for determining whether a private cause of action may be implied, are the criteria through which Congressional intent is to be discerned. *State of California v. Sierra Club,* —— U.S. —— at ——, 101 S.Ct. 1775 at 1779, 68 L.Ed.2d 101.

The first factor is whether the plaintiff is a member of the class for "whose especial benefit the statute was enacted." *Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. at 2087. The first significant consideration is the language of the statute. The stated purpose of the UMTA is to assist in the planning and development of urban and rural mass transportation systems through financial aid to state and local governments. 49 U.S.C. §§ 1601, 1614. The obvious beneficiaries of the Act are the potential users of public transportation. It is a statute enacted for the public benefit and not the benefit of any party who might be eligible for funds to provide this public service. Where a statute is intended to benefit the public at large through a general regulatory scheme, no private cause of action will be implied. *State of California v. Sierra Club*, 101 S.Ct. at 1781. Although the Act does envision coordination with existing mass transportation providers, the UMTA can in no way be construed to have been enacted for their benefit. This Court makes no determination whether plaintiff is in fact a mass transportation provider, but finds only that mass transportation providers are not within the class of persons for whose benefit the statute was enacted. The Sixth Circuit addressed a similar question in *M. B. Guran Co., Inc. v. City of Akron*, 546 F.2d 201 (6th Cir. 1976). In *Guran* plaintiffs sought relief against the City of Akron for alleged violations of a regulation under the Housing Act that requires competitive bidding for urban renewal projects. *Id.* at 202. The court noted the "expression of Congressional interest that private industry be encouraged to participate to the fullest extent" but concluded that the class for whose especial benefit the statute was enacted were those persons living in inadequate housing. The court found that compliance with the regulations was the sole responsibility of the Department of Housing and Urban Development and no private right of action could therefore be implied. *Id.* at 204–05.

Many courts have found that parties who may gain from a particular enforcement of a federal statute or regulation are not special beneficiaries of the statute and no private cause of action may therefore be implied. *State of California v. Sierra Club*, 101 S.Ct. at 1779; *Universities Research Association v. Coutu*, 101 S.Ct. at 1461; *Touche Ross v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Gibson & Perin v. City of Cincinnati*, 480 F.2d 936, 941 (6th Cir.) *cert. denied* 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973); *Dopico v. Goldschmidt*, 518 F.Supp. 1161 (S.D.N.Y.1981).

In *Universities Research*, the Court noted that the fact that an enactment is designed to benefit a particular class does not end the inquiry; instead it must also be asked whether the language of the statute indicates that Congress intended that it be enforced through private litigation." The Court continued that there "would be far less reason to infer a private remedy in favor of individual persons" where Congress, rather than drafting the legislation with an unmistakable focus on the benefited class, instead has framed the statute simply as a general prohibition or a command to a federal agency." 101 S.Ct. at 1461, citing *Cannon v. University of Chicago*, 441 U.S. 677, 690–92, 99 S.Ct. 1946, 1954–1955, 60 L.Ed.2d 560 (1979). Therefore, even if we had found that plaintiff is an intended beneficiary of the Act, we believe this language disposes of the question whether a private cause of action should be implied on these facts.

The Sixth Circuit Court of Appeals recently decided that a private cause of action on behalf of union employees is implied under Section 13(c) of the UMTA. 49 U.S.C. § 1609. *Local Division 1285, Amalgamated Transit Union v. Jackson Transit Authority*, 650 F.2d 1379 (6th Cir. 1981). The Court found that Section 13(c), which requires grant recipients to make certain "arrangements" for the protection of employees' collective bargaining rights, was enacted for the special benefit of transit employees. At 1382. The Court noted, however, that implementation of other provisions of the Act was specifically delegated to the Department of Transportation while there was no enforcement provision for Sec-

tion 13(c) agreements. At 1385. The Court stated that "if the Act had provided any administrative mechanism under Section 13(c), our resolution of this issue might have been altogether different." At 1385. We believe that Congress intended that the Secretary of Transportation implement these provisions of the UMTA, evidenced by the administrative mechanism provided by the Act and followed by the parties to this suit. The decision of the Sixth Circuit in *Amalgamated Transit Union* does not support plaintiff's contention that a private cause of action should be implied under *other* sections of the Act.

The legislative history of the UMTA supports our conclusion that Congress did not intend to create a private cause of action in favor of this plaintiff. While Congress evidenced a concern with protecting mass transportation providers, the UMTA was enacted to provide "efficient transportation that meets a variety of personal and social needs." [1978] U.S. Code Cong. & Ad.News 6575, 6640. There is no language indicating an intent on the part of Congress to create a private cause of action on behalf of the plaintiff.

As stated above, Congressional intent is the most important factor and the *Cort* test is useful only to determine whether an intent to create a private cause of action can be found. The four factors set out in *Cort* are not to be given equal weight and if it appears that the plaintiff is not a special beneficiary of the statute and the legislative history does not show Congressional intent to create a private cause of action, the other three factors need not be considered, and a private cause of action may not be implied. *State of California v. Sierra Club*, 101 S.Ct. at 1781; *Touche Ross v. Redington*, 442 U.S. at 571, 99 S.Ct. at 2487.

### B. 28 U.S.C. § 1361

Plaintiff also alleges jurisdiction under 28 U.S.C. § 1361 which provides: "The District Courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." It is clear that this statute could provide this Court with jurisdiction over the federal defendants only. 28 U.S.C. § 1361 however, does not provide the federal court with jurisdiction where no jurisdiction otherwise exists. *Starbuck v. City of San Francisco*, 556 F.2d 450, 459 n. 18 (9th Cir. 1977); *Craig v. Colburn*, 414 F.Supp. 185, 193 (D.C.Kan. 1976); *J. C. Penny Co. v. Department of Treasury*, 319 F.Supp. 1023 (D.C.N.Y.1970), affirmed 439 F.2d 63 (2d Cir.), *cert. denied* 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971). For reasons stated below, this Court finds there is no independent basis for jurisdiction and therefore no jurisdiction exists under 28 U.S.C. § 1361.

Mandamus may only issue to compel a federal officer to perform a purely ministerial duty and the power of the federal court to intervene depends upon the amount of discretion vested in the federal officer. *Work v. United States ex rel. Rives*, 267 U.S. 175, 177–78, 45 S.Ct. 252, 252–53, 69 L.Ed. 561 (1925). If the administrative duty for which mandamus is sought is determined to be discretionary, jurisdiction will be denied. *Short v. Murphy*, 512 F.2d 374, 377 (6th Cir. 1975). The principal question therefore is whether the UMTA imposes upon any federal officer a mandatory legal duty to perform any ministerial act that would benefit the plaintiff.

Plaintiff alleges only that defendants owe him a duty under UMTA without specifying the exact nature of the duty allegedly owed. Plaintiff does claim that the Secretary had a duty to make an individual factual inquiry regarding "assurances" of statutory compliance provided by defendant Warren County Board of Commissioners. No such duty is imposed by the statute. The UMTA requires the Secretary to make certain findings but does not dictate the manner in which the findings are to be made. It is within the Secretary's discretion to accept assurances from parties submitting bids rather than to make an independent factual investigation.

■ The Federal Regulations provide that assurances of statutory compliance must be made by each state applicant. These assurances address the same factual determinations the Secretary is required to make under the Act and are a sufficient basis for the Secretary's findings. 23 C.F.R. Part 825 Appendix B. A federal court may only direct a federal officer to perform a ministerial duty. It may not direct the manner in which the duty is to be performed. *Short v. Murphy, supra; Commonwealth of Pennsylvania v. National Association of Flood Insurers*, 520 F.2d 11, 26 (3d Cir. 1975). There is ample evidence in the record that the Secretary fulfilled all mandatory obligations under the Act and did not abuse his discretion by the manner in which he made his findings.

In a similar case, the United States District Court for the Eastern District of Pennsylvania denied jurisdiction under 28 U.S.C. § 1361. The Court found in that case that the Secretary of the Department of Housing and Urban Development has a large amount of discretion under the Housing and Community Development Act of 1974, 42 U.S.C. §§ 5301 *et seq.* (Supp.1976), in determining whether satisfactory assurances of statutory compliance have been given by an applicant for a grant. Even though the Act instructs the Secretary to withhold funds from any applicant that does not comply with the Act, the Court held there was no jurisdiction to issue a mandamus instructing the Secretary to make additional findings. *Johnson v. County of Chester*, 413 F.Supp. 1299, 1307–08 (E.D.Pa.1976).

■ Mandamus is an extraordinary remedy and will not lie unless plaintiff has a clear and certain right and the duties of the defendant are ministerial and plainly defined. *Martins Ferry Hospital Association v. National Labor Relations Board*, 654 F.2d 455, 6th Cir. (1981). We find there is no duty owed to the plaintiff imposed by the UMTA. Section 1602 does seek to protect private providers of transportation by requiring the Secretary to make a finding that any federally funded program provides for participation of private mass transpor-

tation companies to the "maximum extent feasible." This can hardly be construed as a duty owed to the plaintiff. It is a general directive from Congress that private providers be included in the plan if feasible. The question whether they should in fact be included in the program was left to the discretion of the Secretary. This Court therefore has no jurisdiction under 28 U.S.C. § 1361.

### C. 5 U.S.C. § 702

■ Plaintiff next claims jurisdiction under the Administrative Procedure Act (APA), 5 U.S.C. § 702 (1977). This section of the APA provides that any person adversely affected or aggrieved by agency action is entitled to judicial review in the federal courts. For many years there was a split of authority in the Courts of Appeal as to whether the APA was an independent grant of federal subject matter jurisdiction, with the Sixth Circuit holding that it was not. *Bramblett v. Desobry*, 490 F.2d 405, 406 (6th Cir. 1974). In 1977, the United States Supreme Court held that the APA is neither an explicit or implicit grant of subject matter jurisdiction permitting federal judicial review of an agency action. *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977). As noted above, plaintiff has asserted no federal right guaranteed to it under the UMTA so as to give this Court subject matter jurisdiction.

Additionally, plaintiff has no standing to bring an action under the APA. In *Gibson v. Perin, supra*, the Sixth Circuit denied standing to parties alleging economic injury resulting from the City of Cincinnati's Urban Renewal Plan. The Court stated that the APA does not confer standing upon any person who suffers economic injury as a result of agency action without regard to whether that person's private rights have been invaded. 480 F.2d at 941. Because the plaintiff's businesses were outside the Urban Renewal Area, the court held their interests were not within the zone of interests to be protected and regulated by the statute. *Id.* at 942, citing *Data Processing Service v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

Franklin Taxi arguably has suffered some economic injury because the entire grant was awarded to the Human Services Board. The UMTA however was not drafted to protect persons such as the plaintiff from all economic injury. The purpose of the regulations is to ensure that rural areas are provided with efficient and economically sound transportation service. To the extent that private companies fill this need, they are to be included. To the extent that a more efficient system can be devised without their participation, the statute does not mandate their inclusion. Private companies are not within the protection of the Act and have no standing to review the way in which it is administered.

■ Even if this Court had jurisdiction to review the agency action in this case, the action may only be set aside if it was "an abuse of discretion" or "not in accordance with law." 5 U.S.C. § 706. Careful review of the record has convinced this Court that all administrative procedures were fully and fairly complied with and there was no abuse of discretion by any of the parties involved. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

### D. Constitutional Claims

Plaintiff also alleges jurisdiction under the Constitution of the United States. Although the Constitution itself does not confer jurisdiction on the federal courts, if this Court were to find that plaintiff has a substantial constitutional claim we would take jurisdiction under 28 U.S.C. § 1331. Plaintiff alleges first that defendants have competed with him unfairly, thereby depriving him of business which constitutes an unjust taking of plaintiff's property without just compensation in violation of the Fifth Amendment to the United States Constitution. Plaintiff also claims that he has been denied due process of law under the Fifth and Fourteenth Amendments to the Constitution.

■ We find that plaintiff has not stated a Constitutional claim. No person is entitled to be free from lawful government competition. *Tennessee Electric Power Co. v. Tennessee Valley Authority*, 306 U.S. 118, 138–39, 59 S.Ct. 366, 369–70, 83 L.Ed. 543 (1939). Competition with private transportation providers is specifically authorized by the UMTA which gives the secretary discretion to include them to the maximum extent feasible *as determined by local needs.* At least one Circuit Court of Appeals has found that Section 1602 does not evidence any Congressional intent to prohibit or protect against competition with private transportation providers. *South Suburban Safeway Lines, Inc. v. City of Chicago*, 416 F.2d 535, 539 (7th Cir. 1969). Unless a statute specifically prohibits competition with private industry, there is no right to be free of competition. Even if economic injury results, it is not the basis of a cause of action against the government; it is *damnum absque injuria*—a damage not consequent upon the violation of any right recognized by law. *TVA, supra* at 137, 59 S.Ct. at 369.

It is not uncommon that a necessary government program somewhat displaces private enterprise, but it is tolerated as being for the public good. The Sixth Circuit recently held that the creation of a monopoly for garbage waste disposal was not a taking of private property for public use so as to be protected by the Due Process Clause of the United States Constitution. *Hybud Equipment Corp. v. City of Akron*, 654 F.2d 1187 (6th Cir. 1981). In that case all competition was eliminated by municipal ordinance and damage to the plaintiffs was not questioned. The Court noted that "the clause prohibiting the taking of private property without compensation is not intended as a limitation of those police powers which are necessary to the tranquility of any well-ordered community, nor of that general power over private property which is necessary for the orderly exercise of all governments. It has always been held that the legislature may make police regulations, although they may interfere with the full enjoyment of private property, and though no compensation is made." At 1192, citing *California Reduction Company v. Sanitary Reduction Works*, 199 U.S. 306, 324–25, 26 S.Ct. 100, 105–06, 50 L.Ed. 204 (1905).

Although *Hybud* concerned sanitary waste disposal, we believe the public interest in the development of efficient mass transportation justifies a similar result in the case before us today. There has been no direct taking of plaintiff's property and we cannot conclude that lawful government competition constitutes a taking for which plaintiff is entitled to compensation. This is precisely the argument rejected by the Supreme Court in *TVA*, 306 U.S. at 139, 59 S.Ct. at 370, and by the Sixth Circuit in *Hybud.* At 1192–1193. In *TVA*, plaintiffs claimed that their franchise to operate as a public utility was a property right which was directly taken or injured by the Authority's competition. 306 U.S. at 138, 59 S.Ct. at 369. The Supreme Court held that the franchise did not guarantee that the utilities would be free from competition. There was therefore no taking of plaintiff's property when the government authorized the Authority to operate in competition with the existing utilities. *Id.* at 139, 59 S.Ct. at 370.

Similarly, there has been no taking of plaintiff's property in the case before us today. Defendants authorized the Human Services Board to operate in competition with the plaintiff but there has been no violation of plaintiff's Constitutional rights. Because there has been no taking of plaintiff's property, the Due Process Clause of the Fourteenth Amendment does not apply.

For the foregoing reasons, this Court concludes that, there being no genuine issue as to any material fact and that judgment should be granted to defendants, defendants motions for summary judgment are well taken and should be granted, and plaintiff's motion for summary judgment should be denied.

SO ORDERED.