### MICHIGAN PARALYZED VETERANS OF AMERICA, Plaintiffs,

v.

### William COLEMAN, et al., Defendants.

### Civ. A. No. 75–71114.

United States District Court,
E. D. Michigan, S. D.

July 29, 1982.

Sheldon Wachler, Southfield, Mich., Thomas Hitch, Barry Brown, East Lansing, Mich., for plaintiffs.

Francis L. Zebot, Detroit, Mich., for defendant Coleman etc.

Herbert G. Sparrow, III, Walter F. Clements, Detroit, Mich., for defendant SEMTA.

Mark J. Zausmer, Birmingham, Mich., William Dietrich, Detroit, Mich., for City of Detroit Transportation Dept.

W. Mack Faison, Detroit, Mich., for SEMCOG.

John J. Roche, Detroit, Mich., for Mich. Dept. of Transportation.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

JULIAN ABELE COOK, Jr., District Judge.

Plaintiff, Michigan Paralyzed Veterans of America, is a non-profit corporation which has been licensed by the State of Michigan for the purpose of representing, promoting and protecting the interests of mobility handicapped and elderly persons who reside in southeastern Michigan.

The individually named Plaintiffs are citizens of the State of Michigan, all of whom have suffered or sustained some form of mobility handicap.

The Defendants are:

The federal officials charged with administrating federal transportation programs under the Urban Mass Transportation Act of 1964, as amended, 49 U.S.C. § 1601, et seq.; Sections 105(a) and 165(b) of the Federal Aid to Highway Act of 1973, as amended, 23 U.S.C. § 142 note (1976); and § 315 of the Department of Transportation and Related Agencies Appropriation Act of 1975, pub. 1. No. 93–391. In addition, the Defendants are charged with violating § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Supp. III 1979).

The state official charged with administering, planning, receiving and utilizing funds received under the aforementioned federal statutes, as well as administering state programs under M.C.L.A. § 247.651, et seq.; M.S.A. § 9.1097(1), et seq. In addition, the Defendants are charged with violating 42 U.S.C. § 1983, and under state law, the Handicappers Civil Rights Act of 1976, M.C.L.A. § 37.1302; M.S.A. § 31550(302).

The local officials and the local organizations, Southeastern Michigan Transportation Authority (SEMTA) the City of Detroit Department of Transportation (DDOT) and the Southeastern Michigan Council of Governments (SEMCOG), who are charged with providing transportation for the citizens in the seven (7) county metropolitan area. The local officials and agencies are charged with violating the aforementioned federal and state statutes.

Plaintiff's Brief in Opposition of the Defendants' Motion to Dismiss and the Brief in Opposition of the Defendants' Motion for

Summary Judgment and Plaintiff's Brief in Support of Its Motion for Summary Judgment, p. 1.

On June 16, 1975, the Plaintiffs filed a Complaint with this Court, claiming that the Defendants, individually and/or collectively, had failed to provide them with adequate, accessible transportation and/or transportation facilities within the southeastern region of Michigan.

Subsequent thereto, the Plaintiffs have filed several Amended Complaints. The last Amendment (to wit, Third Amended Complaint), consisting of nine alleged causes of actions, added Defendants SEMCOG, DDOT and SEMTA, along with a request for money damages. Beginning in late November, 1981, the parties filed a series of motions, all of which seek a full or partial disposition of the issues in controversy. Oral argument was conducted on June 5, 1982. A decision on the respective motions was taken under advisement. The matter is presently before the Court for a decision.

It is the basic claim of the Plaintiffs that all of the Defendants, in varying degrees, have violated (1) their right to equal protection and due process, as guaranteed under the United States and Michigan Constitutions, and (2) those rights which have been extended to them by certain federal and state statutes; to wit,

(1) 42 U.S.C. § 1983,

(2) §§ 105(a), 165(b), Federal Aid Highway Act [FAH Act] of 1973,

(3) § 16, Urban Mass Transit Assistance Act of 1970 [UMTA Act],

(4) § 315, Department of Transportation Appropriations Act of 1975 [DTA Act],

(5) § 302, Michigan Handicappers' Civil Rights Act [MHCR Act], and

(6) §§ 10b(4)(e), 10e(3), Michigan Trunk Line Highway System Act [MTLHS Act].

In essence, the Plaintiffs contend that (1) all of the buses, which are funded, owned, operated and/or maintained by the Defendants within the metropolitan Detroit, Michigan area, must be accessible for use by senior citizens and handicapped persons, and (2) the failure of the Defendants to do so, constitutes a cause of action which entitles them to their requested relief.

Each of the Defendants have denied the Plaintiffs' substantive allegations, and through their presently pending motions, contend that (1) no genuine issues of any material fact exist in the instant cause, and/or (2) the Plaintiffs have not stated a cause of action.

Although the Defendants have filed separate motions, in which they seek their individual and collective removal from the instant cause, the Court will examine and evaluate their respective positions collectively.

The Defendants argue that the Plaintiffs do not have any private right of action to obtain the relief which they seek in the case at bar. However, the Plaintiffs disagree, contending that this issue was resolved on November 3, 1977 by Judge Damon Keith, then sitting as a trial judge on this Bench. Prior thereto, the Defendants filed Motions for Summary Judgment and/or Dismissal, contending, *inter alia*, that neither Section 16(a) of UMTA nor Section 504 of the Rehabilitation Act require every transit bus which (1) has been funded with federal funds, and/or (2) is operated and maintained by a local transit authority to be accessible to the mobility handicapped. They contend that these Acts only require them to (1) make special efforts to assure the effective utilization of mass transportation facilities by those persons who are elderly and/or handicapped [Section 16(a)], and (2) assure that no handicapped individual is denied the benefits of, or is subjected to discrimination under, any program or activity which receives federal assistance solely because of his/her handicap [Section 504].

On November 3, 1977, Judge Keith, acting with legal authority, quite properly denied the Defendants' Motion for Summary Judgment on the ground that it was premature, and (2) allowed the Plaintiffs to amend their Complaint. His Order seems to infer that the Plaintiffs have a cause of action pursuant to Section 504, *Lloyd v. Regional Transportation Authority*, 548

F.2d 1277 (7th Cir. 1977). By analogy, the Order also suggests the existence of a private right of action under the UMTA Act, as well as the regulations which were promulgated thereunder, *Lau v. Nichols*, 414 U.S. 563, 564, 94 S.Ct. 786, 787, 39 L.Ed.2d 1 (1974), *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

▉ When a motion or rule of law has been firmly resolved, it is not subject to review by the Court which issued the Order. This is based on the premise that there would be no end to a legal controversy if every litigant could, through repeated appeals, compel the Court to review and re-evaluate issues which had been resolved in previously issued opinions and/or decisions, *Schwartz v. NMS Industries, Inc.*, 575 F.2d 553 (1978). However, where a new body of law, which relates to a non-dispositive issue, has intervened subsequent to the entry of an Order, that judicial determination may be subject to review within the parameters of the new developments. Since the entry of the November 3, 1977 Order, new law has developed regarding private right of actions in general, and, more specifically, private rights of action pursuant to Sections 16 of the UMTA Act, and 504 of the Rehabilitation Act. In the opinion of this Court, this new genesis of law should be considered in an evaluation of the issues here.

▉ The starting point for any analysis of whether a private right of action does, or does not, exist, must be *Cort v. Ash, supra.* In *Cort*, the procedure for identifying a private right of action, in the absence of an expressed Congressional intent, was set forth as follows:

In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First is the Plaintiff "one of the class for whose especial benefit the statute was enacted"—that is does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And

finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law?

Recent decisions of the Supreme Court have further refined these four criteria, emphasizing that the inquiry must be one of statutory construction in order to determine whether the intent of the Congress was to create a private right of action. *California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981); *Universities Research Ass'n v. Coutu*, 450 U.S. 754, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 689, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979); *Dopico v. Goldschmidt*, 518 F.Supp. 1161 (S.D.N.Y.1981).

Section 16(a) of the UMTA Act, 49 U.S.C. § 1612, states, in pertinent part:

It is hereby declared to be the national policy that elderly and handicapped persons have the same right as other persons to utilize mass transportation facilities and services; that special efforts shall be made in the planning and design of mass transportation facilities and services so that the availability to elderly and handicapped persons of mass transportation which they can effectively utilize will be assured; and that all Federal programs offering assistance in the field of mass transportation (including the programs under this chapter) should contain provisions implementing this policy.

Two decisions, *Associated Business of Franklin v. Warren County Board of Commissioners*, 522 F.Supp. 1015 (S.D.Ohio 1981) and *Dopico v. Goldschmidt, supra*, reinforce the aforementioned principle, both of which have evolved since Judge Keith's Order. In *Franklin*, Plaintiffs, a private taxi company, brought action against federal, state and county officials to challenge an UMTA Act award of a rural transportation

grant to the Warren County Board of Human Services. The Court employed the *Cort* analysis in reaching its decision that Plaintiffs did not have an implied private right of action pursuant to 49 U.S.C. § 1601 et seq.

In *Dopico*, the Plaintiffs, who were wheelchair-bound handicapped individuals, alleged that the Defendants failed to comply with their special effort obligations which are required under the UMTA provisions. The charges included a claimed delay in the approval of wheelchair lifts, as well as an alleged ineptitude by local Defendants when installing two hundred hydraulic lifts. The *Dopico* Court, in reliance upon the *Cort* analysis, rejected the Plaintiffs' Complaint, determining that they did not have a private right of action under the UMTA Act.

The Congressional intent is the most important aspect of the four-prong test, *Transamerica, supra.* In fact, where neither the statute nor the legislative history indicates an intent to create a federal right in favor of the Plaintiff, "the remaining two *Cort* factors cannot by themselves be a basis for implying a right of action," *Universities Research Ass'n v. Coutu*, 101 S.Ct. 1451 (1981), at 1461, fn. 21. Here the language of the statute is to be given the first consideration, *Touche Ross, supra.* The stated purpose of the UMTA Act is to assist in the direction, development and financing of urban and rural transportation systems. The obvious beneficiaries of the Act are all of the potential users of public transportation. It is a statute which was constructed for the benefit of the entire public, as opposed to a small limited sector. Where a statute is intended to benefit the public at large through a general regulatory scheme, no private cause of action will be implied, *Franklin, supra*, 101 S.Ct. at 1019. Assuming, *arguendo*, that the legislation directly benefited the Plaintiffs, this factor would not be conclusive per se. They would still have to establish that Congress intended the statute to be enforced through private litigation, *Universities Research Ass'n v. Coutu*, 101 S.Ct. 1451, 1461. Under

the facts in the record, there is no reason to believe that the Congress intended the Plaintiffs to have private legal access to the Courts under Section 1612 since the legislation was drafted for them generally, and without a specific focus upon them as a benefited class. It is clear that when the Congress intends to create a class of special beneficiaries, it has the power, as well as the ability, to do so, *Local Div. 1285, Etc. v. Jackson Transit Auth.*, 650 F.2d 1379, 1384, 1385 (6th Cir. 1981). Accordingly, it is the opinion of this Court that the record in the instant cause warrants a finding that the Congress did not intend to provide the Plaintiffs with a private right of action to seek and obtain their requested relief. Thus, the request of the Defendants for summary judgment relief is granted.

Even if a private action by the Plaintiffs does exist, this Court believes that the pertinent provisions of the Rehabilitation Act of 1973 do not require the Defendants to take affirmative steps to provide accessible public transportation for all handicapped and elderly persons. Section 504 prohibits discrimination against an otherwise qualified handicapped individual in federally funded programs solely by reason of his/her handicap.

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (1976 ed., Supp. 111) states:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service....

In *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), the Plaintiff, who suffered a hearing disability, sought training as a registered nurse at the College. She was denied admission to the nursing school on the basis of her disability. Subsequently, Davis brought suit, alleging that the

Defendants had breached their affirmative duty to uphold Section 504. The College et al argued that neither the language, purpose nor legislative history of Section 504 imposed an affirmative duty upon them to insure the implementation of Section 504. Furthermore, they asserted that accommodations for the Plaintiff's disorder would require extensive modifications of the nursing school. The Court stated, in pertinent part, that:

> Section 504 by its terms does not compel educational institutions to disregard the disabilities of handicapped individuals or to make substantial modifications in their programs to allow disabled persons to participate. Instead, it requires only that an "otherwise qualified handicapped individual" not be excluded from participation in a federally funded program "solely by reason of his handicap," indicating only that mere possession of a handicap is not a permissible ground for assuming an inability to function in a particular context, *Davis*, at 405, 99 S.Ct. at 2366.

Thus, it is clear that Section 504 does not require affirmative steps in order to insure compliance with the Act. Instead, Section 504 only requires administrators of federally funded programs or activities (as in the instant case) to refrain from discriminating against the handicapped, as opposed to affirmatively acting on their behalf.

The attention of the Court now turns to the Plaintiffs' Motion for Summary Judgment.

■ In 1977, the Michigan Department of Transportation purchased 189 buses from the General Motors Corporation, 132 of which were not accessible (to the handicapped). The Plaintiffs assert that this acquisition violated a Michigan law [to wit, 1976, P.A. 297, § 10e(1)(3), as amended] because (1) the sale of the buses occurred after the statute went into effect on November 15, 1976, (2) the sale of the buses violated the spirit of the statute, and (3) the term contract should be construed as a "grant" rather than a "manufacturer's" contract. 1976, P.A. 297, § 10e(1)(3) reads as follows:

> A transit vehicle shall not be purchased with funds made available under this act, which are not already committed under a contract in existence on the effective date of this amendatory act, until the legislature statutorily prescribes standards which insure that handicapped persons have access to the transit vehicle.

Defendants deny having executed any new contracts after the November 15, 1976 deadline, and affirmatively assert that all transactions subsequent to enactment of the statute were in compliance therewith.

In a letter, dated October 29, 1976, Representative William A. Ryan, Michigan House of Representatives, wrote to John P. Woodford, Director, Michigan Department of State Highways and Transportation:

> To the extent that my personal opinion can be of some assistance in applying the spirit and intent of the language in S.B. 1387 relative to vehicle acquisitions, I wish to convey my understanding of the intent of that language.
>
> The legislature had not determined the specifications that would be statutorily mandated relative to the future manufacturing of vehicles. So the intent of the deferral language was to defer the commencement of any manufacturing of vehicles until that decision would be made by the legislature.
>
> We could not make the deferral language apply to any contracts previously placed with manufacturers even though the manufacturing of those vehicles might be in the earliest stages.
>
> Nor was the language intended to preclude the acquisition of vehicles which are already existent. On this score, though, I would consider it to be a violation of the *spirit* of the language if any entity were to now *begin* to take actions to acquire vehicles now existent. Or to put it another way, I would request the department not to cooperate with any entity in the acquisition of existent vehicles if such entity had not been taking procedural steps leading to the acquisitions and taking those steps prior to the passage of S.B. 1387 in the House of Representatives.

Further, such procedural steps would have had to be pointed to the acquisition of existent vehicles—not pointed to manufacturing of vehicles before House passage of S.B. 1387 and then switched to acquisition of existent vehicles after passage of S.B. 1387.

It is my opinion that if those safeguards are observed, then the spirit and intent of the language will be upheld and abuses will be avoided.

On December 5, 1977, Frank J. Kelley, Michigan Attorney General, wrote to Michigan State Representative Jelt Sietsema:

> You have requested my opinion as to whether the Southeastern Michigan Transportation Authority's (SEMTA) July 27, 1977 contract with General Motors Corporation for the purchase of 189 new transit vehicles is violative of 1976 P.A. 297, § 10e(1)(3), which amended 1951 P.A. 51, § 10e(1)(3); M.C.L.A. § 247.660e; M.S.A. § 9.1097(10f), effective November 15, 1976, as follows:
>
>> A transit vehicle shall not be purchased with funds made available under this act, *which are not already committed under a contract in existence on the effective date of this amendatory act*, until the legislature statutorily prescribes standards which insure that handicapped persons have access to the transit vehicle. (Emphasis added)
>
> It should be noted that in the quoted language the legislature does not establish a moratorium on the purchase of transit vehicles, but rather precluded purchases with funds it made available under the act [1] until the statutory standards are prescribed as therein required. [2] Further, this prohibition by its express terms, has no application to contractual commitments of such funds made prior to the effective date of 1976 P.A. 297, *supra*, regardless of the source of funding. Consequently, it is clear that the legislature in passing 1976 P.A. 297, § 10e(1)(3), *supra*, did not preclude the purchase of transit vehicles when funding commitments were made prior to November 15, 1976, nor does the statute preclude the purchase of such vehicles with funds from another source.
>
> I have been advised that the Michigan State Highway Commission entered into three grant contracts with SEMTA committing general transportation fund monies to partially finance SEMTA's purchase of up to 264 transit vehicles. [3] A review of these grant contracts discloses that they were executed as follows: No. 75–1564 approved by the State Administrative Board January 20, 1976, executed January 21, 1976; No. 76–0497 approved by the State Administrative Board August 17, 1976, executed August 17, 1976. It is therefore my opinion that, because the above three contracts predate the effective date of 1976 P.A. 297, *supra*, SEMTA's purchase of the transit vehicles with the use of general transportation funds committed to SEMTA under these contracts does not violate 1951 P.A. 51, § 10e(1)(3), *supra*.
>
>> ■ 1951 P.A. 51, § 10b(1); M.C.L.A. § 247.660b; M.S.A. § 9.1097(10c), established the general fund out of the motor vehicle highway fund for general transportation purposes.
>>
>> ■ There are no statutory prescribed standards which insure that handicapped persons have access to the transit vehicle.
>>
>> ■ 80% of the cost of the transit vehicles is being financed by a federal grant through the Urban Mass Transportation Administration (UMTA).

In an attempt to resolve the issue which has been presented by the Plaintiffs, this Court will (1) accept the Ryan communication as being instructive, but not binding, and (2) assign "great weight" to the opinion of the Michigan Attorney General, *Fowler v. Kavanagh* (D.C.E.D.Mich.1944), 63 F.Supp. 167.

On the basis of the uncontested facts in the record, this Court is satisfied that (1) the subject grant contracts were executed prior to the effective date of November 15, 1976, and (2) the Defendants did not act in violation of M.C.L.A. § 247.660e when SEMTA contracted to purchase the 189 new buses on July 27, 1977.

Therefore, this Court is of the opinion that the Plaintiffs are not entitled to the relief which they seek in their Motion for Summary Judgment.

So Ordered.