**Michael J. RIPHENBURG, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. M84–157 CA2.**

United States District Court, W.D. Michigan, S.D.

March 28, 1986.

Steward, Peterson, Sheridan & Nancarrow, by James E. Nancarrow, Ishpeming, Mich., for plaintiff.

Anne V. Tuuk, Asst. U.S. Atty., Grand Rapids, Mich., for defendant.

## OPINION RE MOTION TO DISMISS OR FOR SUMMARY JUDGMENT AND RE MOTION TO AMEND

HILLMAN, District Judge.

This matter is before the court on defendant United States of America's motion to dismiss or for summary judgment, and plaintiff's motion to amend. For the reasons stated below, the motion to amend is denied and the motion for summary judgment is granted.

### FACTUAL BACKGROUND

Plaintiff Michael Riphenburg is a Technical Sergeant (TSgt.) on active duty in the United States Air Force (USAF), working as a maintenance specialist. He has been on active duty for over 16 years.

Prior to April 23, 1981, plaintiff had been certified by his commander under the USAF "Personnel Reliability Program" (PRP) to work on or near nuclear weapons. The PRP is governed by Department of Defense Directive (DDD) 5210.42, entitled "Nuclear Weapon Personnel Reliability Program,"[1] and Air Force Regulation

---

**1.** Department of Defense Directive 5210.42 (DDD 5210.42), dated April 23, 1981, entitled

"Nuclear Weapon Personnel Reliability Program."

(AFR) 35–99 [2] which implements it. The PRP is "designed to ensure the highest possible standards of individual reliability in personnel" working on or near nuclear weapons.[3]

On March 18, 1981, plaintiff witnessed marijuana smoking by USAF personnel at a private residence and reported it to his superiors the following day. During a subsequent investigation, plaintiff voluntarily took a polygraph test, during which he admitted having once experimented with marijuana in June 1978, while on leave. On April 23, 1981, plaintiff's commander, pursuant to AFR 35–99, temporarily decertified plaintiff from the PRP. Plaintiff's job at the time involved maintenance on aircraft carrying nuclear weapons. Because of the temporary decertification, he was removed from those duties but continued to work as a maintenance specialist, albeit not around nuclear weapons. Plaintiff was also entered in a drug rehabilitation program by his commander.

On May 8, 1981, the wing commander permanently decertified plaintiff from the PRP "based on your admission of drug abuse (use of marijuana) on or about June 1978 and your failure to report it to the proper authority while assigned ... as a Technical Sergeant performing duties under the ... PRP." Plaintiff subsequently applied to the Air Force Board for Correction of Military Records (AFBCMR) requesting recertification in the PRP. The AFBCMR denied relief, finding no probable error or injustice in the decertification procedure or decision. This lawsuit followed. Plaintiff asks the court to overturn the AFBCMR decision and reinstate him in the PRP.

Defendant United States moved to dismiss for lack of subject matter jurisdiction on grounds that plaintiff had failed to allege the requisite jurisdictional facts, that at most his complaint presented a nonjusticiable political question involving the internal operations of the military services, and/or the complaint failed to state a claim upon which relief could be granted as it involved nonreviewable military matters. Alternatively, defendant moved for summary judgment claiming that plaintiff had failed to show that the AFBCMR decision to deny reinstatement was arbitrary, capricious or unsupported by substantial evidence. Plaintiff has opposed the motion and filed a motion to amend his complaint, contending that the proposed first amended complaint cures any jurisdictional defect.

## STANDARD OF REVIEW

Defendant's presentation and the court's acceptance of matters outside the complaint, including the record of the AFBCMR proceedings, have converted defendant's Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. Wright & Miller, *Federal Practice & Procedure,* Civil §§ 1356, 1366.

On a motion for summary judgment, movant bears the burden of showing conclusively that no genuine issue of material fact exists. *Smith v. Hudson,* 600 F.2d 60 (6th Cir.), *cert dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); *Tee-Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193 (6th Cir.1974); Fed.R.Civ.P. 56(a). In determining whether issues of fact exist, "the inferences to be drawn from the underlying facts contained in [the exhibits] must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). A court may not resolve disputed questions of fact in a summary judgment decision, and if a disputed question of fact remains, the district court should deny the motion, and proceed to trial. *United States v. Articles of Device,* 527 F.2d 1008, 1011 (6th Cir. 1976).

## DISCUSSION

Neither plaintiff's original complaint nor his proposed first amended com-

**2.** Air Force Regulation 35–99 (AFR 35–99), dated April 14, 1981, entitled "Personnel Reliability Program."

**3.** DDD 5210.42, at ¶ 4.

plaint contains an allegation establishing the jurisdictional basis for his claim. In answer to the court's recent inquiry in this regard, plaintiff suggested that subject matter jurisdiction would rest on 28 U.S.C. § 1361, which provides:

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

This statute "does not provide the federal court with jurisdiction where no jurisdiction otherwise exists," *Associated Businesses of Franklin v. Warren*, 522 F.Supp. 1015, 1020 (S.D.Ohio 1981), and plaintiff has not demonstrated that jurisdiction otherwise exists. Before the merits of plaintiff's claim may be considered, there must be independent statutory authority evidencing the government's consent to be sued and conferring jurisdiction on the district court. Absent that, this court has no jurisdiction to grant any relief to plaintiff. *See Cleveland Chair Co. v. United States*, 526 F.2d 497, 498 (6th Cir.1975), *citing United States v. Shaw*, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940). Plaintiff has not demonstrated this independent statutory authority, in either his original or his proposed first amended complaint. Accordingly, the court does not have subject matter jurisdiction over plaintiff's "petition for mandamus," and plaintiff's motion to amend is properly denied, since the proposed amendment fails to cure the deficiency, and would be futile.

■ Even if I could find that jurisdiction otherwise existed, I am satisfied that the administrative duty for which mandamus is

sought is discretionary, mandamus will not lie and the case should be dismissed.

"[M]andamus will not lie unless the duty imposed on the federal official is a mandatory or ministerial obligation. 'If the alleged duty is discretionary or directive, the duty is not "owed." ' *Short v. Murphy*, 512 F.2d 374, 377 (6th Cir.1975). *See generally Work v. United States ex rel Rives*, 267 U.S. 175, 177–78, 45 S.Ct. 252, 252–53, 69 L.Ed. 561 (1925). Absent a federal official's failure to perform a mandatory duty to exercise discretion, jurisdiction by way of mandamus will be denied if the court concludes that the administrative duty for which mandamus is sought is discretionary. *See, Associated Businesses of Franklin v. Warren*, 522 F.Supp. at 1020."

*Leonard v. Orr*, 590 F.Supp. 474, 478 (S.D. Ohio 1984). It is apparent from the pertinent AFRs that decisions whether to temporarily or permanently decertify or to recertify rest solely with the commanding officer's discretion and judgment.

The policy behind the PRP is to protect national security by requiring "that only those personnel who have demonstrated unswerving loyalty, integrity, trustworthiness, and discretion of the highest order shall be employed in nuclear weapon PRP positions."[4] Acceptance into PRP is "based on a determination that such acceptability is ... clearly consistent with the interest of national security," and the determination must be made "on the basis of evidence supporting all of the reliability standards" contained in the DDD, "or on the absence of derogatory evidence related to these standards."[5] The "reliability standards" attached to DDD 5210.42 set forth qualifying standards for PRP certification [6] and then provide, at ¶ 2, that:

---

**4.** *Id.*, at ¶ D–1.

**5.** *Id.*, at ¶ D–5.

**6.** *Id.*, at Enclosure 4, "Reliability Standards," providing, in pertinent part:

"1. *Qualifying*
  a. Physical competence, mental alertness, and technical proficiency commensurate with job or duty requirements.
  b. Evidence of dependability in (1) accepting responsibilities, (2) effectively accomplish-

ing duties in an approved manner, and (3) flexibility in adjusting to changes in working environment.
  c. Evidence of good social adjustment and emotional stability and ability to exercise sound judgment in meeting adverse or emergency situations.
  d. Positive attitude toward nuclear weapon duty, including the purpose of the PRP."

"[a]ny of the following traits or conduct shall be considered disqualifying, unless overriding evidence of reliable duty performance exits [sic]:

b. Drug abuse. It is not intended that *isolated or experimental use of* cannibus derivatives, such as, *marijuana* or hashish, be automatically disqualifying. *The Certifying Official must make a judgment as to whether or not such experimental or isolated use has an adverse impact on the individual's reliability.*"

[Emphasis added.]

AFR 35–99 implements DDD 5210.42 and again reiterates that the PRP is designed to assure that the highest possible standards of individual reliability are met by those working around nuclear weapons.[7] It is the commander (a/k/a certifying official) who makes the initial determination of individual reliability:

"*The commander makes a judgment,* based on knowledge of past behavior and insight gained from a personal interview with the individual. *The commander must use his insight,* together with specific facts, a detailed knowledge of performance, and consultative opinions from other agencies (such as the hospital) *to arrive at the best judgment about the individual's reliability.*"

[Emphasis added.] AFR 35–99, ¶ 2–2. Evidence of "behavior patterns that show or suggest a contemptuous attitude toward the law or regulations," or evidence of drug or alcohol abuse give the commander a reason to question an individual's reliability. AFR 35–99, ¶¶ 2–2c(4) & (5). Even after an initial determination of dependability is made, the individual is continually monitored for anything which might cast doubt on his reliability. AFR 35–99, ¶ 2–2e. The individual is also required to monitor his own reliability:

"Individuals assigned to PRP duties have the responsibility to monitor their own reliability from the safety standpoint. They should be aware of how certain problems, concerns, and circumstances may reduce their effectiveness ... Individuals must advise supervisors of all factors ... that could have an adverse impact on their performance and safety. *Failure to discharge this responsibility may cast doubt on the individual's reliability and continued performance in PRP duties.*"

[Emphasis added.] AFR 35–99, ¶ 2–5.

Decertification procedures under AFR 35–99 "are deliberately designed to allow expedient removal of an individual from PRP when, *in the judgment of the immediate commander,* there could be a problem of program safety or security," and the commander decides whether removal from PRP duties will be by suspension, temporary decertification or permanent decertification. AFR 35–99, ¶¶ 5–1(a) & (c) (emphasis added). Temporary decertification is used when "the immediate commander receives information that could lead to permanent decertification" but in the commander's judgment more time is required for evaluation. AFR 35–99, ¶ 5–4. A temporary decertification must be resolved within 180 days, either by removal of the decertification or imposition of permanent decertification. AFR 35–99, ¶ 5–5(8).

Decertification procedures when drug abuse is involved are governed by AFR 35–99, ¶ 5–11, and when first time possession or use of marijuana is involved, ¶ 5–11(b) provides that:

"[T]he certifying official assesses each individual according to AFR 30–2, paragraph 4–20. Certifying officials should carefully evaluate all information before reinstating or removing individual from PRP duties. *Single* or unsupported *allegations of personal use of marijuana ... need not dictate removal from PRP duties.* Those individuals identified as first time ... users ... who are entered into the drug rehabilitation program, are eligible for reinstatement to PRP duties on entry into Phase V of the drug rehabilitation program. *Each case of this*

---

**7.** AFR 35–99, at ¶ 1–1.

*nature must be fully evaluated by the certifying official before returning the member to PRP duties"*

[Emphasis added.] AFR 30-2, ¶ 4-20, referenced in the quoted passage, gives the commander discretion to decide whether individuals involved with first time or isolated use of marijuana should be entered into rehabilitation.[8] When an individual is shown by investigation to be a "drug abuser" as defined in AFR 30-2, AFR 35-99, ¶ 5-11a provides that:

> "(1) [t]he certifying official initiates temporary decertification action, and enters the member into drug rehabilitation. If the estimated duration for completion of the rehabilitation program is in excess of 180 days, or if the prognosis for completing the rehabilitation program is poor, the member should be permanently decertified."

Plaintiff claims that the USAF failed to follow this regulation in his case. He reads ¶ 5-11a(1) as permitting permanent decertification only when the conditions stated therein are present. He therefore reasons that because those conditions were not present in his case (he was permanently decertified after only 16 days in the program and at no time during his attendance in the program was his situation considered long term or his prognosis for completion poor), he could not be permanently decertified and is entitled as a matter of right to recertification in the PRP. I disagree.

What the foregoing regulations, including AFR 35-99, ¶ 5-11a, reveal is that *all* decisions regarding removal from PRP duties, temporary and/or permanent decertification, and recertification of permanently decertified personnel,[9] are left to the certifying official's case-by-case evaluation, discretion and judgment. Nowhere in the regulations is the certifying official required to decertify and/or recertify and reinstate an individual to PRP duties.

The purely discretionary nature of these decisions was emphasized in the AFBCMR decision [10] denying plaintiff relief. The preliminary Air Staff evaluation of the claim noted that the fundamental reason for plaintiff's decertification was determined to be:

> "... his failure to report his use of marijuana to proper authorities in accordance with the governing regulation. Specifically, the regulation stipulates that individuals bear the responsibility of advising supervisors of all factors that could impact their performance and/or safety, and states failure to discharge this responsibility may cast doubt on the individual's reliability ad continued performance in PRP duties. Therefore, his decertification was more from lack of trust than as a marijuana experimenter...

Finally, AFR 35-99 allows a commander to immediately reinstate a permanently PRP decertified individual. Applicant's commander hasn't initiated such action, which indicates his support of the permanent decertification. They [Air Force Manpower Personnel Center (AFMPC)] state that they must question the reliability of an Air Force technical sergeant with nuclear weapons duties that would experiment with drugs known to be illegal, as well as failure to report same to

8. Air Force Regulation 30-2, dated November 8, 1976, entitled "Social Actions Program," Section F—"Identification of Drug Abusers," ¶ 4-20-b provides, in pertinent part:

> "In cases where members are involved for the first time in the personal use or possession for personal use of marijuana, the immediate commander will evaluate each individual to determine whether rehabilitation is appropriate. When an individual is not identified for entry into rehabilitation, the commander should not normally remove the member from currently assigned duties. However, other administrative actions may apply at the commander's discretion, such as actions un-

der AFR 35-32 or AFR 35-99. Each case must be evaluated against the following criteria:

> \* \* \* \* \* \*

> (5) An investigation, when appropriate, to determine whether the drug use extends beyond the simple use or possession of marijuana."

9. AFR 35-99, at ¶ 5-12.

10. AFBCMR Record of Proceedings dated February 11, 1983, Docket No. 82-01821, in the Matter of Michael J. Riphenberg.

proper authorities. Based on the above, they recommend denial."[11]

The AFBCMR concluded, in pertinent part: "4. While the commander had the regulatory provisions available to him, to permanently decertify the applicant from PRP duties, he chose to temporarily decertify him. This action is viewed as good judgment on the commander's part, thusly affording him the opportunity to completely evaluate the seriousness of the circumstances prior to a final determination. While the applicant may believe the regulation was violated because of his admission into the Drug Rehabilitation Program, we find no error in the commander's decision to do so, or to remove him from his PRP duties. *The final decision rested with the commander and he apparently determined that the element of trust, when handling nuclear weapons, was questionable and removed the applicant from the program permanently.* We find ourselves in agreement with the Air Staff that technically, the more appropriate decision for decertifying the applicant from the program would have been his failure to meet the necessary standards for PRP duties, however, the use of marijuana was substantiated. The commander was permitted to reinstate him in the program after permanent decertification, but did not do so, therefore, this strengthens our belief that his decision was well-founded and appropriate. In view of the foregoing, and absent substantive evidence to the contrary, we find no basis which warrants favorable consideration in this case."

[Emphasis added.][12]

Unless defendant's duties are ministerial and plainly defined, and plaintiff has a clear and certain right, the extraordinary remedy of mandamus will not lie. *Associated Businesses of Franklin,* 522 F.Supp. at 1021; *see also Martins Ferry Hospital Association v. National Labor Relations Board,* 654 F.2d 455 (6th Cir.1981). The administrative duty for which plaintiff seeks mandamus, namely, the duty to recertify and reinstate him to PRP duties, is purely discretionary under the regulations, and hence no duty is "owed" to plaintiff within the meaning of 28 U.S.C. § 1361. Thus, there can be no mandamus jurisdiction or relief as a matter of law. Accordingly, defendant's motion for summary judgment should be granted.

## CONCLUSION

For the reasons stated above, plaintiff's motion to amend is denied, and defendant's Rule 12(b)(6) motion to dismiss, converted to a Rule 56 motion for summary judgment, is granted, and plaintiff's complaint is dismissed with full prejudice.